## JOHN C. McCASKILL v. M. McKINNON and wife.

*Action to Foreclose Mortgage—Mortgage—Privy Examination of Married Woman—Presence of Husband—Duty of Officer taking Privy Examination of Married Woman—Equitable Lien on Married Woman's Land for Husband's Debts.*

1. In the trial of an issue as to whether a married woman had been privily examined separate and apart from her husband, touching her free and voluntary consent to the execution of a mortgage signed by her, her own testimony that she did not declare such consent to the examining officer but objected to signing the instrument and signed it only after her husband told her to do so, and testimony of the examining officer that he did not explain the paper or the nature and purpose of the privy examination or question her as to her free consent, and other testimony showing that the husband was in sight and hearing of his wife and the officer during the pretended examination, constituted evidence proper to be submitted to the jury upon the issue.

2. Where, in the trial of an issue whether a married woman voluntarily executed a mortgage and was privily examined separate and apart from her husband touching her voluntary execution thereof, it appeared that the examining officer, purporting to have taken her acknowledgment, represented her as stating that she signed the same freely and voluntarily and the evidence was all directed to what she said at the time of the examination, it was not error to instruct the jury that if she, upon her examination, did not state to the officer that she signed the mortgage freely and voluntarily, the jury should answer the issue in the negative.

3. It is the duty of an officer, when taking the privy examination of a married woman as to her voluntary execution of an instrument, to explain the same to her and to see that the provisions of the Statute are strictly complied with; otherwise such examination is invalid.

4. A married woman whose husband was threatened with the sale of his own land under mortgage, consented to sell and convey her own land to the mortgagee in settlement of the mortgage upon her husband's land of which she was to become the owner. The deed by which she conveyed her land described it as her own land, and the recited consideration was applied without her knowledge to the credit of a debt of her husband other than that secured by the mortgage. Subsequently, the mortgagee sold her husband's land and procured it to be bid in for the wife and conveyed to her and attempted to take a

reconveyance by way of mortgage for the original debt for which it was mortgaged and another debt owed by the husband. The mortgage was invalid by reason of the want of a privy examination of the wife as to her voluntary execution of the same. *Held*, that the creditor has no equity to have his debt declared a lien upon the land, since the wife had bought it with her own separate estate and had not authorized its value to be applied otherwise than to the satisfaction of the mortgage on the land which she so bought

CIVIL ACTION tried before *Coble, J.*, and a jury at April Term, 1897, of RICHMOND Superior Court. There was a verdict for the defendants and from the judgment thereon plaintiff appealed.

*Messrs. J. F. Payne, Frank McNeill*, and *Shepard & Busbee*, for appellant.

*Messrs. McRae & Day*, and *J. D. Shaw, Jr.*, for defendants.

FURCHES, J.: This action is to foreclose a mortgage which plaintiff alleges the defendants, McKay McKinnon and wife Grace H. McKinnon, executed to him, dated August 28, 1886. The land conveyed in this mortgage belonged to the *feme* defendant and was to secure an indebtedness of the husband McKay McKinnon.

The record in this case is voluminous, containing many exceptions involving questions as to competency of evidence admitted and rejected—the question of agency—and the right of the agent to apply money in his hands as such agent to the payment of his individual indebtedness. Among the many questions presented by the record there are two, the solution of which will determine the rights of the parties. This being so, we proceed to consider them and thereby avoid the consideration of a great many other questions presented by the appeal.

It is denied by the defendants that the privy examination of the *feme* defendant was taken as to the mortgage the plaintiff now seeks to foreclose. If it was not, the plaintiff

cannot have a judgment of foreclosure.   Plaintiff says that if
this is so he is entitled to an equitable lien on the land for
the payment of his debt.   The jury found that the private
examination of the *feme-covert* was not taken to the mortgage.
This settles the matter of plaintiff's right to foreclose, unless
there has been error committed by the Court in the evidence
admitted or rejected, or in the instructions given to the jury.

The evidence offered upon this issue, as to whether Mrs.
McKinnon was privily examined or not, was that of D. A.
Patterson, the Justice who made the certificate of privy
examination, and of McKay McKinnon, the husband of the
*feme* defendant, and her own testimony.   There are no ex-
ceptions to Patterson's evidence, and while there were excep-
tions to the evidence of both McKinnon and his wife, there
were none to their evidence on this issue.   This being so, if
there was evidence upon which the jury might reasonably
find the issue in the negative, this finding must stand.

The witness Patterson among other things testified that
"after Mr. McCaskill and Mr. McKinnon retired, the witness
read over the certificate, or started to read, and thinks he
read it.   She wanted to explain something, or wanted wit-
ness to explain something, witness don't remember; some-
thing witness didn't know anything about.   Mr. McKinnon
came back to the door and told her it was all right, or words
to that effect.   The matter dropped right there; there was
no more said and witness signed the paper.   McKinnon
came to the parlor door; witness and Mrs. McKinnon were
inside the parlor; there was a hall and door from hall to
parlor; witness was from the parlor door several feet."

The *feme* defendant testified that plaintiff, witness Patter-
son, her husband and herself were all at her house; that she
and Patterson were in the parlor, and plaintiff and her
husband were in the parlor, or in the piazza; were part of
the time in one place and then in the other.   She says she

"did not execute the deed freely and voluntarily; did not tell Mr. Patterson that she signed the deed freely; she objected to signing the mortgage. After she raised an objection, she signed it; after she raised objection don't think Mr. Patterson asked her if she signed it freely and voluntarily; don't think anything was said while witness was in the parlor; she could see plaintiff and Mr. McKinnon. Mr. McKinnon was certainly where he could see her during the whole of the time. She recollects signing the mortgage; after she wrote her name to the paper she never told Mr. Patterson or any one else, that she signed it freely and voluntarily."

The husband, McKay McKinnon testified that "Mrs. McKinnon and Mr. Patterson were in the parlor about 6 or 7 feet from where witness was on the piazza; she refused to sign the mortgage; witness heard her tell Mr. Patterson so; witness was in hearing distance all the time and in sight of them, was sitting in the window; they had some trouble about signing it in there, and witness and McCaskill went in the parlor before she signed it and witness told her to sign it; witness and McCaskill were both present; she did'nt state that she signed it voluntarily and freely, after they went back, and there were no more questions asked her about it; she just signed it, and Mr. Patterson signed his name, and they all came out."

The plaintiff McCaskill testified: "Notes and mortgage were signed by the defendants, and after that Mr. McKinnon and witness retired to the piazza; witness could not hear what Mr. Patterson and Mrs. McKinnon said, and Mr. McKinnon was out there with witness."

There is some conflict in this evidence between the plaintiff and the other witnesses, Patterson, McKinnon and wife Grace. But not as to what occurred between Patterson and

121—28

the *feme* defendant, as the plaintiff swears that he was not in the parlor and could not, and of course did not hear what took place. But whatever conflict there may be, it was a matter for the jury to consider and determine what the truth of the matter was, and not for us. The only question that comes to us for our determination is whether the evidence was such as the Court should have submitted this issue to the jury upon, and we are of opinion it was.

But plaintiff contends that if there was sufficient evidence to carry this issue to the jury, there was error in the Judge's charge in submitting it to the jury. We therefore reproduce the entire charge of the Court upon this issue, believing this to be entirely fair to the plaintiff, which is as follows:

"The 3rd issue is—

'Did Grace H. McKinnon freely and voluntarily execute the mortgage described in the complaint, and was she privately examined, separate and apart from her husband, touching her voluntary execution of the same?'

"The certificate of the Justice of the Peace to the mortgage states that the *feme* defendant was examined separate and apart from her husband touching her voluntary execution of the same, and that she stated that she did sign the mortgage freely and voluntarily, without fear or compulsion on the part of her said husband or of any other person, and that she did at the time she was so examined freely and voluntarily consent thereto.

"The jury are instructed that the certificate of the Justice of the Peace is presumed to be true, and that the burden of proving that it is not true is upon the defendants. If the defendants have rebutted this presumption by proof and have shown that the *feme* defendant did not freely and voluntarily execute the mortgage, and that she was not privately examined separate and apart from her husband

touching her voluntary execution of the same, the jury will answer this issue 'No.'

"If the *feme* defendant executed the mortgage described in the complaint freely and voluntarily and if she was privately examined, separate and apart from her said husband touching her voluntary execution of the same, the jury will answer this issue 'Yes.'

"The defendants contend that the *feme* defendant objected to signing the mortgage; that she and the Justice of the Peace, Patterson, were in the parlor and that she objected to signing the mortgage; that her husband and plaintiff were in her sight and hearing, that her husband came to the door of the parlor and she signed the mortgage, but that the J. P. never asked her whether she signed the same freely and voluntarily and never examined her separate and apart from her husband touching her voluntary execution of the same. That her husband was never out of her presence, and that neither was McCaskill.

"The plaintiff contends that the *feme* defendant did sign the mortgage freely and voluntarily, and that she was examined, separate and apart from her husband, touching her voluntary execution of the same.

"The jury are instructed that it was not necessary to the validity of the examination of the *feme* defendant by the J. P. that her husband should have gone entirely out of the room; it was only necessary that he should have gone separate and apart from the *feme* defendant, and so far as to leave her free to express to the J. P. her will and desire with respect to the alleged mortgage, freely and voluntarily.

"The defendants contend that the male defendant did not go separate and apart from his wife so far as to leave her free to express her will and desire with respect to the alleged mortgage freely and voluntarily, and that in fact the J. P. never did ask her whether she freely and voluntarily signed and consented to the mortgage.

McCASKILL *v.* McKINNON.

"As above instructed the burden is upon the defendants to rebut the presumption raised by the certificate of the J. P. If they have rebutted this presumption the jury will answer this 3rd issue 'No.'

If they have failed to rebut it, the jury will answer the 3rd issue 'Yes.' "

In response to prayer for instructions by defendants' counsel the Court charged the jury that if Mrs. McKinnon on her examination by the Justice of the Peace, Patterson, did not state to him on such examination that she signed said mortgage freely and voluntarily, the jury should answer the 3rd issue 'No.' "

Plaintiff excepted.

The Court further instructed the jury on this issue in response to prayers by defendant's counsel: "It was the duty of the Justice of the Peace in taking the privy examination of Mrs. McKinnon to explain the same to her and see that the provisions of the statute were strictly complied with, and if in this case the Justice failed to do so you will answer 3rd issue "No."

Plaintiff excepted."

But our attention was called more particularly to the two last paragraphs.

Plaintiff says it was error to charge the jury "that if Mrs. McKinnon, on her examination by the Justice of the Peace, Patterson, did not state to him on such examination that she signed said mortgage freely and voluntarily, the jury will answer the third issue No." We see no error in this instruction. It is the duty of the Judge to adapt his charge to the evidence bearing upon the issue before the jury—to the case in hand. The certificate of the Justice of the Peace says it was taken separate and apart from her husband, and that she "doth state that she signed the same freely and voluntarily, without fear or compulsion, &c." The evidence

was all directed to what she said.  There is not a suggestion in the evidence that she assented to the examination or expressed her free and voluntary assent in any other way than by saying that she did.  We do not say that a case might not be presented where the acknowledgement might not be shown, without using the exact words used in the charge.  But, from the evidence in this case, the charge appears to us to have been proper.

The plaintiff further excepts to the last paragraph of the charge.  He complains that the Court charged that it was the duty of the Magistrate, Patterson, "to explain the same to her, and see that the provisions of the Statute were strictly complied with, and in this case if the Justice failed to do so, you will answer the third issue No."  We see no error in this instruction.  At common law a *feme-covert* could only convey her land by the fictitious action of fine and recovery. This has been changed by Statute in England and in this State, so as to allow her to alien her land by deed in which her husband joins, and privy examination.  The right to take privy examinations for a long time was given to the Judges of the Supreme and Superior Courts, and to the Courts of Pleas and Quarter Sessions in term time, and when in session as an organized Court.  When this Court was abolished by the Constitution of 1868 and the Acts of legislation following, this right was given to the Clerks of the Superior Courts as the successors of County Courts.  This was well enough, as the clerks were elected by the whole people of the County and were likely to be men of character and intelligence.  But the Legislature, upon the plea of convenience have increased the list of those who may take privy examinations to a great number of officers.  They, next after the clerks, gave it to Justices of the Peace, then to notaries public, and then to deputy clerks, but it has not yet been given to policemen.  Convenience is a good thing, but

McCASKILL *v.* McKINNON.

it is a mistake to place convenience before the protection
afforded or intended to be afforded married women in taking
their privy examinations. The object of the privy examina-
tion was to protect wives from having their estates squan-
dered by unkind, dissipated, spendthrift husbands. This in
our opinion should be more regarded than mere conven-
ience. Upon this line of thought we must be pardoned for
quoting a paragraph from the opinion delivered by *Ruffin,
J.,* in *Burgess* v. *Wilson,* 13 N. C., (at p. 311). That great
lawyer in discussing the subject of privy examination says:
"After open confession in Court, she is then to be examined,
when in privacy, and with self collection, which a timid
female, in the presence of a crowd and overawed by the
authority of her husband, might not be able to command in
public, that she may have an opportunity of retracting her
deed after her interests have been weighed by her, and her
rights *explained* by an intelligent and upright judicial officer.
This being done all at once, there is not so much appre-
hension, though certainly some even here, of malversation
in the examining magistrate. The danger of immediate
detection would subdue his disposition to aid in the undue
machinations of a cruel husband. But the facility for prac-
ticing abuses on the wife would be great indeed, if the trust
of receiving her acknowledgment were reposed in a single
justice of the peace as a matter *in pais.*"

Although this duty has been given to other persons than
Judge Ruffin and the able Court of which he was a member,
at the time this opinion in *Burgess* v. *Wilson* was delivered,
still the manner in which it should be done is the same now
that it was then. And thus understanding the law, it seems
to us that the charge of the Court should be commended
rather than condemned.

These examinations carry with them the presumption of
being true, as they should do, or the titles to much of the

landed property in this State would be insecure. And this makes it much more important that they should be taken by men of intelligence and character. We see no error in this ruling, and the only question that remains to be considered is the equities of the case.

The plaintiff contends that, if he is held not to be able to enforce his mortgage, it would be inequitable and unconscionable for the *feme* defendant to repudiate the contract and be allowed to retain the land. And he asks the Court so to declare, and by some means give him relief. For this contention he cites *Burns* v. *McGregor*, 90 N. C., 222; *Wood* v. *Wheeler*, 106 N. C., 512, and *Draper* v. *Allen* 114 N. C., 50, but we are unable to see that they apply to this case.

The facts in brief are that McKay McKinnon, husband of the *feme* defendant, was indebted to the plaintiff in the sum of $900, evidenced by three promissory notes, and in 1876 he executed a mortgage to the plaintiff on the land in dispute to secure this debt, that in 1884 the plaintiff was pressing the husband for these debts and threatened to foreclose. The *feme* defendant agreed, through her husband, to sell the plaintiff real estate which she owned in the town of Fayetteville for $1,200, in payment of the mortgage debt, and that she was to become the owner of the mortgaged land (which seems to have been her home), in place of her Fayetteville property. And on February 14, 1884, the defendants executed a deed to the plaintiff for the wife's property in Fayetteville at the price of $1,200, in which deed it is stated that it was the wife's land, willed to her by her deceased father. So, the plaintiff took title to this land, knowing that it was the land of the *feme* defendant. The plaintiff and his brother afterwards sold the land in controversy as mortgagees, bid it off for the *feme* defendant at the price of $1,000, and made her a deed therefor; and on the same day undertook to take the mortgage upon which this

action was brought.  The plaintiff alleges that he entered a credit on a book account he had against the husband, for the $1,200, the price of the Fayetteville land.  And the debt which this mortgage was intended to secure was the debt due by the first mortgage debt and a balance of five hundred and some dollars, which the husband still owed him on his book account.  There is some conflict in the evidence about this, but one thing remains undisputed, that the plaintiff got twelve hundred dollars worth of the *feme* defendant's land, and she has never received anything for it, unless it is the land in dispute.  He knew that the Fayetteville land belonged to the *feme* defendant, as it is so stated in the deed, and it is not pretended that the *feme* defendant ever consented that the price of this land should be entered as a credit on her husband's book account with the plaintiff.  And if it was so entered, even with the consent of the husband, it was unauthorized and a fraud on her.  *Williams* v. *Johnston*, 92 N. C., 532.  All the debts were the debts of the husband, and not the wife's debts.  Her land is gone, the plaintiff is the owner of it, and she has nothing in consideration but the land in dispute.  Under these circumstances we cannot interfere with her title.  *Williams* v. *Walker*, 111 N. C., 604.

Affirmed.