GREENLEAF-JOHNSON LUMBER COMPANY v. W. P. LEONARD
and wife.

(Filed 6 November, 1907).

1. Deeds and Conveyances — Contracts to Convey Lands — Married Woman—Privy Examination—Signing under Mistake—Probate with Knowledge.

When it is admitted that a married woman, at the time of signing a contract to convey land, believed it conveyed the timber thereon only, but had been correctly informed thereof before her proper acknowledgment, and privy examination was taken before a justice of the peace, such acknowledgment would relate back to the signing of the deed, and would be as effectual as if she had known at the time of the signing that it was a contract to convey the land.

2. Same—Contracts to Convey—Evidence—Signing under Mistake—Proof—Burden of Proof.

When the judicial act of the justice of the peace in taking the acknowledgment, or privy examination, of a married woman to a contract to convey land was being inquired into, and the *feme* defendant, the married woman, had been permitted to testify that, at the time of her signing, she thought it related to the timber only, it was competent in contradiction of this testimony to show by the justice that if she had made any such statement to him subsequently, or at the time he took her acknowledgment, he would not have probated the instrument.

3. **Same—Married Woman—Examination—Certificate—Fraud.**

When the certificate of examination of a married woman to a contract to convey is made by a justice of the peace in due form, and supported by evidence, it can only be attacked by clear, strong, cogent and convincing proof. It is error for the court below to charge the jury "the burden of proof is upon the defendant to show her contentions by the greater weight of the evidence."

4. **Same — Married Woman — Probate — Certificate — Fraud — Evidence—Proof.**

The certificate of the proper officer who took the privy examination of a married woman shuts off all inquiry as to fraud, duress or undue influence in signing a deed or conveyance, unless participated in by the grantee or his agent, and also precludes all inquiry into fraud or falsehood in the *factum* of the privy examination, unless it appears by clear, cogent and convincing proof that no examination was had, or that her voluntary consent was refused, and so expressed to the officer at the time.

Clark, C. J., and Hoke, J., concurring; Walker and Connor, JJ., dissenting.

Civil action, brought by plaintiff for the specific performance of a contract and agreement for the sale and purchase of a tract of land in Franklin County, fully described in said contract, against defendants, W. P. Leonard and wife, M. F. Leonard. The action was heard before *Cooke, J.,* and a jury, at October Term, 1906, of Franklin Superior Court.

The pleadings are set out in the record, and in its complaint plaintiff alleged the execution of the contract for conveyance of the land, tender of deed within the time prescribed by the contract, drawn in accordance with its terms, and tender also of the contract price. The *feme* defendant alone answered, and admitted all the allegations of the complaint except the binding execution of the contract, alleging that she signed the contract believing it to be for sale of timber instead of the fee to the land, and denying that she acknowledged its execution, as required by law. Plaintiff, tendering the deed and purchase money into court, renewed its demand for the specific performance of the contract.

From judgment denying the prayer for specific performance the plaintiff appealed.

*W. H. Ruffin* and *F. S. Spruill* for plaintiff.

*W. M. Person* and *W. H. Yarborough, Jr.*, for defendants.

Brown, J.  We think there should be a new trial of this case.

1. The plaintiff, in apt time, handed up the following prayer for instruction, viz.: "That although the *feme* defendant, M. F. Leonard, did, at the time she signed the contract to convey, believe and suppose that it was only a contract to convey the standing timber, yet, as she, after having ascertained that it was a contract to convey the land, subsequently acknowledged to the justice of the peace, separate and apart from her husband, that she signed the same freely and voluntarily, without fear or compulsion of her husband or any other person, and that she did still voluntarily assent thereto, such acknowledgment would relate back to the signing of the contract, and would be as effectual against her as if she had known at the time of the signing that it was a contract to convey the land that she was signing; and if the jury should so find, they will answer the first issue 'No.' "

We think it was prejudicial error in the Court to refuse to give this instruction.  It deprived the plaintiff of its strongest position before the jury.  It is admitted that Mrs. Leonard signed the deed a week before the justice of the peace came to her house to take her privy examination.  She testifies herself that when she signed the deed she believed it to be a conveyance of the timber only, but that she learned from her husband that it was a deed for the land on the evening of the same day on which she signed it.  She admits she knew its true purport a week before the official called to take her examination.

Stokes, the justice of the peace, testifies as follows:

"Q. You are an acting justice of Franklin County, and were such acting justice on the 25th of September, 1905? A. Yes.

"Q. Examine that paper (exhibiting option) and see if it is your probate. A. Yes, sir.

"Q. When you took that probate, what did you ask Mrs. Leonard?   A. I asked her if she signed 'this paper of her own free will and accord, if she was forced by her husband or any other person, and—'

"Q. How did she answer?   A. She said she did.   I asked her if she was forced by her husband or any other person. She said: 'No.'   I says: 'You still assent, then, freely and voluntarily, on your part?'   She says: 'Yes.'   I asked her: 'Then you still say it is freely and voluntarily, of your own free will and accord?'

"By the Court: Did you ask her if she still voluntarily assented?   A. I asked her them three questions.

"Q. Did she still voluntarily assent to it?   A. She answered them 'Yes.'

"Q. You asked her that, and she answered 'Yes'?   A. Yes, sir.

"Q. At that time did she say anything about having misunderstood the purport of the paper?   A. She said, while I was there—I don't know whether to me or to Captain Phil—says: 'When I signed that contract I thought it was for timber only, instead of for the land and timber.'

"Q. Was that after you asked her those questions?   A. I think it was."

That testimony is plainly susceptible of the construction placed upon it by plaintiff, viz., that, although Mrs. Leonard did not know the option contract covered the land at the time she signed it, yet she was informed of it the same day by her husband, and that she acquiesced, and when the justice came the following week she duly acknowledged and voluntarily assented to the paper, although she stated, after her privy examination was taken, either to "Captain Phil" or the justice, that, had she known the true nature of the paper in the beginning, she would not have signed it.   This is the justice's account of the matter, and it is entitled to great weight.   The prayer for instruction was intended to present that phase of

the testimony to the jury, and it is supported by Stokes' evidence. It seems to me erroneous to refuse it. The plaintiff had a right to have that phase of the evidence presented to the jury.

2. The following questions were asked witness Stokes, for the evident purpose of corroborating and strengthening his testimony:

"Q. Would you have probated that paper, as you have, had she said to you at the time that she signed it thinking it was a timber deed?" Defendants objected to the question.

"Q. Would you have probated the paper at the time if you had understood her to say at the time that she thought she was signing a timber deed?"

These questions were excluded by the Court, and plaintiff excepted. We think this ruling was erroneous and prejudicial. The evidence was competent, upon the ground that the judicial act of the officer was being inquired into, and the evidence tended strongly to support and corroborate his evidence and to affirm his good faith and integrity. The *feme* defendant having been permitted, over plaintiff's objection, to state that she told the officer at the time he took her acknowledgment that she thought she was signing a timber contract instead of a land contract, it was competent in contradiction of this testimony to show that, if she had made any such statement to him, the paper would not have been probated by him. We cannot imagine any statement that could be more strongly corroborative of the accuracy of the justice's recollection than the one which the excluded questions sought to bring out.

3. The Court erred in charging the jury that "The burden of proof is upon the defendant in respect of the contentions, and the finding of either one of the issues in her favor must be by the greater weight of the testimony." The certificate of the justice is in due form, and is also supported by abundant evidence. It can only be attacked by clear, strong, cogent and convincing proof. *Benedict v. Jones,* 129 N. C.,

472.   The court should instruct the jury with the greatest care in cases of this character, and explain to them that the solemn act of a judicial officer is not to be lightly set aside, and certainly not upon a mere preponderance of evidence, but only upon very clear, strong and cogent proof, which should fully convince the minds of the jury.   Unless in their opinion the proof comes fully up to this standard, we think the Judges of the Superior Court should not hesitate to exercise their discretion and set aside a verdict which destroys the legal effect of such an important judicial act, and one which is so essential to the security of titles.

4.   Much may be said in favor of the contention that, "if the private examination of the wife *shall have been certified* in the manner prescribed by law," by the purport of section 956 it is not open to attack at all, except upon the ground that "its execution was procured by fraud, duress or other undue influence," to which the grantee must be shown to be a party. In other words, it is contended that, if the officer certifies in due form the wife's voluntary assent, when in fact she refused to give it, it is a fraud perpetrated against the wife and the purchaser both, but one to which the grantee or his agent must be proven to be a party, in order to invalidate the certificate. However that may be, we are of opinion that the certificate of the officer of privy examination of a married woman shuts off all inquiry as to fraud, duress or undue influence in the treaty, unless participated in by the grantee or his agent.   It also precludes all inquiry into fraud or falsehood in the *factum* of the privy examination itself, unless the *feme covert* can make it appear, by clear, cogent and convincing proof, either that no such examination was had at all, or that on such examination she refused to give her voluntary assent to the execution of the instrument, and so expressed herself to the officer at the time he undertook to examine her.   In the case at bar there is no such evidence offered in contradiction of the official certificate, the truthfulness of which has the additional

support of the clear and unequivocal testimony of the officer who made it. On the contrary, the evidence shows that her entire objections and statements, made when Stokes was at her residence, related, not to the privy examination at all, nor to what she understood at that time, but to her act and mental attitude in respect to the execution of the instrument at the time she signed it, several days before, when Stokes, the justice, was not present.

For the reasons given, we think that there should be a new trial.

CLARK, C. J., concurs on the ground that the Court erred in refusing plaintiff's prayer, and also in instructing the jury that the certificate of the privy examination could be set aside by "the preponderance of the evidence." In *Benedict v. Jones,* 129 N. C., 470, it is held that the presumption of the correctness of such certificate must be overcome "by clear, strong and convincing evidence." It would shake the security of titles if it could be done on a mere preponderance, which a jury might, in their gallantry to the sex, give to the testimony of a young and pretty woman over the bare certificate of the justice, who may be dead, and when the holder of the property, at a third or fourth conveyance, perhaps, may not, and probably would not, be able to get corroborating testimony to support the certificate of the officer. Here the officer was living, but the rule as to the amount of evidence to overcome his certificate is the same.

In the adjoining States to this—Virginia, South Carolina, Tennessee, as well as in many others—privy examination has long ago been abolished as a useless formality, and the execution of a deed by a married woman is binding on her to the same extent, and can be set aside only upon the same proof, as if she were a single woman. It is hardly reasonable to suppose that a woman, upon becoming married, *ipso facto,* reverts into the helplessness of *non sui juris,* a class whose only other members are "infants, idiots, lunatics and con-

victs." The sole ground for such suggestion is the assumed possibility of "undue control or duress" by the husband. But in this case there is no allegation nor proof of such undue influence by the husband, and it is noteworthy that if there had been it would not vitiate the deed unless it had been participated in by the grantee, or he had notice thereof before receipt of the deed. Revisal, sec. 956. This section makes the execution of a deed by a married woman, when there is a certificate of privy examination, unimpeachable, except for "fraud, duress or undue influence," participated in or known by the grantee, and absolutely unimpeachable in the hands of an innocent purchaser, though from a grantee who participated in or had knowledge of such fraud, duress or undue influence.

Originally, the privy examination was by the court, and the certificate was equivalent to a judgment of fine and recovery, and hence unimpeachable, except as any other judgment would be. *Woodbourne v. Gorrell,* 66 N. C., 82. When the certificate was transferred to a single justice of the peace out of court, the courts were compelled to hold that the certificate was subject to inquiry and impeachment. *Jones v. Cohen,* 82 N. C., 75. This making titles insecure, the statute (Revisal, sec. 956) intervened and allowed impeachment of the deed of a married woman, notwithstanding the privy examination, but only when there is duress, fraud or undue influence, participated in or known to the grantee, thus putting her deed now practically on the same footing as would be the case if the privy examination were abolished.

CONNOR, J., dissenting: The exception to his Honor's refusal to submit the issue tendered by plaintiff is based upon a misconception of defendants' answer. In the first answer filed the *feme* defendant alleged that she was induced to sign the contract by the false and fraudulent representations of plaintiff's agent. This answer, by permission of the Court, was amended and the charge of fraud expressly withdrawn..

This was, in the light of the evidence, proper.   I do not find any evidence of fraud on the part of any one connected with the transaction.   I have no doubt that the contract was made by the husband to sell the land, and that it was fairly and correctly read, in the manner and under the circumstances testified to.   It is entirely natural that the *feme* defendant did not hear it, or at least did not do so understandingly; that, knowing her husband was selling to a lumber company, she supposed the sale was of the timber only, and that "she did not feel deeply interested about it."   It is but common justice to so interpret the conduct of all parties.   His Honor correctly interpreted the answer, wherein the *feme* defendant says "that she never legally consented to the conveyance of the land itself, nor acknowledged the execution of said option, as required by law.   She further insists that, in equity, she ought not and cannot be compelled to specifically perform a contract for the conveyance of land which she signed with the belief that it was a contract for the conveyance of timber on the land alone, which she repudiated as soon as informed that it did purport to concern the land, and which she never acknowledged, as required by the law governing the contracts and conveyances of married women."   Her defense is substantially a plea of *non est factum*.   It may be conceded that if she were *sui juris* her failure to read the deed, or give proper attention to its contents when read in her presence, coupled with the fact that there was no mistake on the part of the plaintiff, would bar her of any equitable relief for rescission or reformation.   If *sui juris,* signing and delivery, in the absence of fraud or mutual mistake, would have made a completed contract valid at law, and, for the reasons stated, beyond the power of a court of equity to rescind or reform. She contends, however, that before the last and essential act was done which bound her she gave notice of her dissent, and the reasons therefor.   The question thus presented is, in an important respect, different from the cases cited in the

opinion, wherein a married woman, with knowledge of the act and its legal effect upon her property rights, acknowledges the execution of the deed, free from the control or undue influence of her husband and all other persons, and thereafter seeks to avoid it by averring that her acknowledgment was not true; that, notwithstanding her solemn statement to the contrary, she was coerced, etc.   In such cases she attacks the certificate for fraud alleged to have been practiced upon her by her husband or some other person.   It was formerly held that she was estopped by the certificate, and could have relief only in equity.   *Woodbourne v. Gorrell,* 66 N. C., 82. The statute in this respect has been changed, as pointed out in *Jones v. Cohen,* 82 N. C., 75, and other cases.   The ease with which this charge could be made, the difficulty of successfully meeting it, and the frequency with which it was made endangered titles to land in the hands of *bona fide* grantees and purchasers for value, without notice of such alleged fraud.   To meet the evil the General Assembly wisely enacted, at its session of 1889, a statute (now section 956 of the Revisal) protecting innocent grantees and purchasers. While the answer to the first issue is in accordance with the weight of the testimony, it is not decisive of the case, but, followed by the answer to the second issue, sustains the defendant's contention in regard to the manner in which the acknowledgment was taken.   The principal question for decision, therefore, is presented by the plaintiff's exception to the charge.   His Honor, upon the second issue, told the jury, if they found, the burden of proof being upon the defendant, that "at the time of taking her acknowledgment she did say that she signed the contract thinking it was only for the sale of timber, they will answer the second issue. 'No.' " It is too elementary to require the citation of authority that a married woman can convey her real estate or interest therein only in the manner and by complying with the essential requisites prescribed by law.   Unless she does so, her signature

and delivery of a deed or contract concerning her land is absolutely void, both at law and in equity. *Scott v. Battle,* 85 N. C., 184, and numerous other cases in our reports. Acknowledgment and private examination by some one of the officers named in the statutes, and in the manner pointed out, is necessary to the valid execution of a deed or contract to convey. Until the last act in the proceeding has been done, and the matter has passed beyond the control of the officer, the contract is incomplete, and she may retract her signature; hence it is that she must not only acknowledge that she signed it freely, voluntarily, etc., but, what is equally essential, she must declare that "she still assents thereto." So long as it is the policy of the Legislature to restrict the power of married women to dispose of their real estate and place around them the protective provisions found in our statutes, it is our duty to enforce the law in accordance with its spirit. The Legislature, to meet new conditions, has enlarged the number of officers having jurisdiction to take these examinations, and removed many of the strict requirements which were formerly found in the statute. The law still requires that she acknowledge the due execution of the deed, etc. There is great wisdom in the observations of *Judge Ruffin* in regard to the manner in which this duty should be performed. In *Burgess v. Wilson,* 13 N. C., 306, he says: "After confession in open court, she is then to be examined, where, in privacy and with self-collection, which a timid female in the presence of a crowd and overawed by the authority of her husband might not be able to command in public, that she may have an opportunity of retracting her deed after her interests have been weighed by her and her rights explained by an intelligent and upright judicial officer." While the law has in some respects been changed, it would be well for clerks and other officers having probate jurisdiction to read and observe the language of this great and wise Judge. To permit the wife to be bound by a contract to release her dower, when she, in

the presence of the plaintiff's agent, the witness to the deed, and the officer taking the probate, coupled her statement that she *signed* the paper freely, etc., with the declaration that when she did so she thought it was a contract for the sale of the timber, it seems to us, would be trifling with the statutory protection thrown around her by the Legislature.    There is no substantial difference in the testimony.    Plaintiff's witness, Harper, and the justice corroborate Mrs. Leonard. There is, as we have said, no fraud charged or proven on the part of any one.    She simply did not execute the contract as the law requires.    If notice to the plaintiff of what occurred was necessary, it is shown by the evidence that Captain Alston, the agent of plaintiff, was present, heard and saw what occurred—in fact, took part in the conversation.    The case does not come within the language or the spirit of section 956 of the Revisal.    While it may be that the officer taking an acknowledgment of a married woman is not required to understand and explain to her all of the provisions of the deed, if, before he has completed the examination and affixed his certificate, he has good reason to think that she does not fully understand its contents and its legal effect upon her rights, common prudence and fairness to her suggest, if they do not demand, that he withhold his certificate.    In *McCaskill v. McKinnon,* 121 N. C., 214, the Judge instructed the jury that it was the duty of the officer taking the examination to explain the deed to her, etc.    This instruction was approved by this Court.    It must be conceded that language is found in the opinion in *Benedict v. Jones,* 129 N. C., 470, difficult to reconcile with what is said in *McCaskill v. McKinnon, supra.*    In *Benedict v. Jones* the wife simply said that she signed it freely, etc., but "she did not know what the paper was."

Without calling into question the correctness of the decision in that case, I think the language of the wife here was much more positive and free from ambiguity.    While it is

true that the exact language of the statute may not be required, it is equally true that, if, notwithstanding the formal use of its exact language, it is apparent to the officer taking the examination that the mind of the wife does not assent to the act, or that she does not understand it, he should not "stick in the bark" by contenting himself with formal answers to questions, but look to the substance of the judicial procedure in which he is engaged, and refuse to proceed until satisfied that the *feme covert* understands what she is doing. The verdict was in accordance with the evidence. Counsel for defendants earnestly insist that, if the admitted facts were insufficient to sustain the plea of *non est factum,* they disclose a case in which the Court will refuse specific performance, and leave the plaintiff to work out its remedy by an action for damages. There is much force in the position, and, in view of the fact that the plaintiff is not out of pocket any money, nor has otherwise changed its position by reason of the conduct of the *feme* defendant, and the contract was unilateral, plaintiff assuming no liability whatever, I should hesitate to decree specific performance compelling the wife to release her inchoate dower. While much has been said by writers on equity jurisprudence and by chancellors regarding the rules by which courts are governed in decreeing specific performance, I have not found any statement of the doctrine more satisfactory than that in *Leigh v. Crump,* 36 N. C., 299 : "Even though the contract of which specific performance is sought be valid at law, and, if it had been executed by the parties, could not be set aside because of any vice in its nature, yet, if its strict performance be, under the circumstances, harsh and inequitable, a court of equity will not decree such performance, but leave the party claiming it to his legal remedy." *Pendleton v. Dalton,* 92 N. C., 185. The contract should be fair, just, certain and understood by and between the parties. *Tillery v. Land,* 136 N. C., 546.

LUMBER CO. *v.* LEONARD.

WALKER, J., dissenting: I agree fully in all that *Mr. Justice Connor* has said in his opinion. Whether the requirement of the statute that there should be privy examination be wise or expedient is not a question with which this Court has anything to do. We do not belong to the legislative department of the government and have no right to change the statute. We must construe the law as we find it. It has been wisely provided that there should be three divisions of government—one to make the law, another to expound, and still another to execute it. The people have the right, through their chosen representatives, to say what the law shall be, and this Court has no right or power to say otherwise. When we attempt to do so we trench on the prerogative of the legislative department. The sooner we clearly understand the relation between the different co-ordinate departments of our State government, the more surely will we confine ourselves within the defined limits of our jurisdiction as prescribed to us by the people under their Constitution. I am not, of course, opposed to any such change of the married woman's law as the Legislature may think will accord more nearly with what we may suppose to be the enlightened spirit of the age. I believe that honorable body has proceeded so far cautiously, and that it has had due regard to the delicate relation always subsisting between husband and wife, not wishing to compel by legislation any course of action which *may* imperil the unity and harmony and the happiness of the home, for "surely in the homes of the people lodge at last the strength and responsibility of this government, the hope and the promise of this republic."

I must respectfully protest against the suggestion that the law so classified married women, in respect to their right of contracting, as to place them in the same category with idiots, lunatics, persons *non compos mentis* and *convicts,* for the purpose of degrading them in the estimation of society, as I well

know that there was no such intention.   It must occur to any
one who will consider and apply candidly and frankly the
reason of the law by which married women are required to
be privily examined that such was not the purpose.   It is not
because they are insane, idiotic or *non compos,* nor even be-
cause they may be incapable of judiciously managing their
own affairs, that the law was enacted.   It is perfectly appa-
rent that such is not the reason which actuated the Legisla-
ture.   It is simply because of the delicate and confidential
relation subsisting between husband and wife, and the fact
that even a woman with perhaps more sense and wisdom
than her husband has—and this is not infrequently the case—
will sometimes yield to his wishes, or to his undue persuasion
or influence, to prevent family jars or friction and preserve
peace in the household.   It is the highest tribute the law
could pay to woman that it recognizes her refined sense of
propriety and her unselfish desire to do whatever may pro-
mote conjugal felicity and her delicate sensibility in such
cases.   It is just for this reason that it provides against the
abuse of those excellent virtues by a thriftless or perhaps
brutal husband.   And again, it is to protect the weak and
confiding wife, however sound of mind she may be, against
the machinations of a designing and mercenary husband.   It
was never the purpose of the law to rank her, in the scale of
intelligence or morality, with weaklings or convicts.   I be-
lieve that many a good woman, endowed with mental faculties
and capacity at least equal to those of her husband, has been
saved by this beneficent and wholesome law from destitution
and poverty.   If we regard privy examination as an idle
ceremony, to be performed by the judicial officer in a merely
perfunctory manner and without due regard to the real pro-
tection of the married woman—a mere form and not a serious
procedure, as it is and was designed to be—it will be of little
or no avail.   But we must assume that officers will discharge

145—23

their duty in the same spirit which prompted the Legislature in imposing it upon them, and in an efficient and not merely a formal way. The law, if I may be permitted to say so, is a wise and salutary one, when properly enforced, and, since the enactment of the recent statute mentioned in the opinion of *Justice Connor,* the rights of innocent purchasers are sufficiently safeguarded.