THE NORTH CAROLINA STATE BAR, Plaintiff/Appellee v. DOUGLAS S. HARRIS, ATTORNEY, Defendant

No. COA99-580

(Filed 4 April 2000)

## 1. Discovery— attorney disciplinary hearing—privileged documents

The Disciplinary Hearing Commission did not err in an attorney discipline case for misappropriation of client funds by denying defendant's motion to compel discovery of the reports and witness interview notes of the State Bar's investigator because witness statements and notes taken by the bar counsel or bar investigator are privileged and not discoverable absent a showing of substantial need and that the person seeking the materials was unable, without undue hardship, to obtain the substantial equivalent. N.C.G.S. § 1A-1, Rule 26(b)(3).

## 2. Discovery— attorney disciplinary hearing—interrogatories—answers by counsel

The State Bar did not err in allowing its counsel to answer defendant's interrogatory questions in an attorney discipline case for misappropriation of client funds because the State Bar's counsel, as an agent of that governmental agency, was the proper party to answer the interrogatories under N.C.G.S. § 1A-1, Rule 33.

## 3. Attorneys— disciplinary hearing—evidence not concealed

In an attorney discipline case for misappropriation of client funds, the State Bar did not improperly conceal evidence of the identity of the client's organ teacher, whose deposition testimony was admitted into evidence, and a statement by the client's brother because: (1) the record reveals that the organ teacher was listed as a State Bar witness in the pretrial stipulations; and (2) the State Bar's investigator did not take any notes when he talked to the client's brother, and defendant failed to

comply with the requirement of showing undue hardship under N.C.G.S. § 1A-1, Rule 26(b)(3) since he could have deposed the client's brother.

**4. Attorneys— disciplinary hearing—questions of expert not improper**

The Disciplinary Hearing Commission did not allow one of its members to act as a handwriting expert witness during the questioning of the State Bar's forensic handwriting expert in an attorney discipline case for misappropriation of client funds because a review of the evidence reveals the Hearing Committee member merely requested that the expert compare defendant's known handwriting sample with the client's purported signature on the release and settlement check.

**5. Attorneys— disciplinary hearing—notary certification—presumption of truth rebutted**

Even though there is a presumption in North Carolina that the recitations contained in a notary's certificate or acknowledgment are true, the Disciplinary Hearing Commission did not err in an attorney discipline case for misappropriation of client funds by finding that the notary certificates on the release and power of attorney were false because the presumption was rebutted by clear, cogent, and convincing evidence that the client was in Florida at the time defendant's secretary allegedly witnessed the client sign the forms at the attorney's office.

**6. Attorneys— disciplinary hearing—finding of fact—misappropriation of client funds—clear, cogent, and convincing evidence**

The Disciplinary Hearing Commission did not err in an attorney discipline case for misappropriation of client funds by finding as fact that defendant's bank account balance was below $8,900 in support of the allegation that defendant appropriated his client's portion of a settlement check for defendant's own use or purpose in violation of former Rule 10.1(C) of the North Carolina Rules of Professional Conduct, because: (1) the operating account is the basis of the finding rather than defendant's aggregate accounts; (2) defendant acted on behalf of the client in settling the claim with the insurance company when defendant's employment had already been terminated; and (3) defendant wrote a check to the Internal Revenue Service out of the same operating account into which he deposited the settlement check,

and the balance remained below the portion of the settlement owed to the client.

**7. Attorneys— disciplinary hearing—finding of fact—client testimony—clear, cogent, and convincing evidence**

The Disciplinary Hearing Commission did not err in an attorney discipline case for misappropriation of client funds by finding as fact by clear, cogent, and convincing evidence that in July 1997 defendant sent a private investigator to Florida to give $8,900 to the client based on the clients's testimony because: (1) even though defendant challenges the client's testimony regarding statements allegedly made by the private investigator during their telephone conversation as inadmissible hearsay, defendant waived this argument under N.C. R. App. P. 10(b)(1) by failing to object during the hearing; and (2) even though defendant appears to challenge the credibility of the client's testimony, the court is concerned only with the sufficiency of the evidence.

**8. Attorneys— disciplinary hearing—finding of fact—improper advance of financial assistance—clear, cogent, and convincing evidence**

The Disciplinary Hearing Commission did not err in an attorney discipline case for misappropriation of client funds by finding as fact by clear, cogent, and convincing evidence that defendant advanced financial assistance to three clients in violation of former Rule 5.3(B) and former Rule 1.2(A) of the Rules of Professional Conduct when the evidence reveals defendant loaned money from his brother's company to one client for surgery; to another client for rent and payments on a car note; and to yet another client for payment of surgical, medical, and travel expenses.

Appeal by defendant from order entered 6 November 1998 by the Hearing Committee of the Disciplinary Hearing Commission of the North Carolina State Bar. Heard in the Court of Appeals 24 February 2000.

*Fern Gunn Simeon for the North Carolina State Bar.*

*Douglas S. Harris, Pro Se.*

WYNN, Judge.

The North Carolina State Bar brought this action before the Hearing Committee of the Disciplinary Hearing Commission of the

State Bar by a complaint alleging that the defendant, a licensed attorney, violated various Disciplinary Rules of the Code of Professional Responsibility while representing Brenda Capps in a personal injury action.

A hearing on this matter was held before the Hearing Committee on 8 and 9 October 1998 and 6 November 1998. The evidence showed that Capps discharged the defendant by letter dated 16 August 1996. Then she consulted with another attorney whom she hired later to represent her in the action. That attorney sent the defendant a letter dated 22 August 1996 requesting that he notify Allstate Insurance Company, the insurance carrier for the tortfeasor under Capps' claim, of his discharge.

On 23 August 1996, the defendant negotiated a settlement of Capps' claim with an adjuster of Allstate Insurance Company. Under the settlement agreement, the adjuster sent the defendant a check in the amount of $12,000.00, issued to the defendant and Capps in full and final settlement of the claim. Along with the check, the defendant received a form releasing any further claims in the settled matter.

The defendant presented evidence that on 18 January 1997, Capps came to his office in Greensboro, North Carolina and signed the release form and a limited power of attorney authorizing him to sign her name to the settlement check. In fact, the defendant's secretary, a public notary, testified during the hearing that she had acknowledged Capps' signature on the release and power of attorney on that particular day. Also, the defendant testified that he wrote a check for $8,900.00 out of his operating account and gave Capps the check during her visit to his office.

The State Bar, however, presented evidence that on 18 January 1997 Capps was in Largo, Florida attending organ lessons in the morning; attending an organ concert in the afternoon; and dining out with friends in the evening. Further, the State Bar's audit revealed no evidence of a check clearing the defendant's operating account in the amount of $8,900.00 made payable to Capps.

Following the hearing, the Hearing Committee entered an order disbarring the defendant from the practice of law. From this order, he appeals.

**N.C. STATE BAR v. HARRIS**

[137 N.C. App. 207 (2000)]

The appellate courts' standard of review for attorney discipline cases is the "whole record test." *See N.C. State Bar v. Sheffield*, 73 N.C. App. 349, 354, 326 S.E.2d 320, 323 (1985). Under that standard, this Court examines all competent evidence in the whole record on appeal to determine whether the agency decision is supported by substantial evidence. *See In re Meads*, 349 N.C. 656, 663, 509 S.E.2d 165, 170 (1998) (quoting *Rector v. N.C. Sheriff's Educ. & Training Standards Comm'n*, 103 N.C. App. 527, 532, 406 S.E.2d 613, 616 (1991)). Therefore, under the whole record test, the Hearing Committee's ruling should be affirmed if it is supported by substantial evidence which is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Retirement Villages, Inc. v. N.C. Dept. of Human Resources*, 124 N.C. App. 495, 498, 477 S.E.2d 697, 699 (1996); *In re Meads*, 349 N.C. at 663, 509 S.E.2d at 170.

## I. DISCOVERY INFORMATION

The defendant challenges the Hearing Committee's order of discipline on the grounds that his due process rights were violated when he was denied access to necessary discovery information by: (A) the Hearing Committee and (B) the State Bar.

### A. The Hearing Committee

[1] The defendant first contends that the Hearing Committee erred in denying his motion to compel discovery of the reports and witness interview notes of the State Bar's investigator because that evidence was not protected under the attorney-work product privilege. We disagree.

In *Hickman v. Taylor*, 329 U.S. 495, 91 L. Ed. 2d 451 (1947), the United States Supreme Court held that oral and written statements of witnesses obtained or prepared by an adverse party's counsel in the course of preparation for possible litigation are not discoverable without a showing of necessity. In effect, the *Hickman* Court recognized the attorney-work product rule which is "a qualified privilege for witness statements prepared at the request of the attorney and an almost absolute privilege for attorney notes taken during a witness interview." *In re PCB*, 708 A.2d 568, 570 (Vt. 1998); *see also Hickman*. Also, under the attorney-work product rule, the mental impressions, conclusions, opinions and legal theories of an attorney are absolutely protected from discovery regardless of any showing of need. *See Hickman*.

Indeed, the North Carolina Rules of Civil Procedure provide for the attorney-work product privilege by stating that

> a party may obtain discovery of documents and tangible things otherwise discoverable under subsection (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's consultant, surety, indemnitor, insurer, or agent only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of his case and that he is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court may not permit disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation in which the materials sought or work product of the attorney or attorneys of record in the particular action.

N.C. Gen. Stat. § 1A-1, Rule 26(b)(3) (1990).

Although our courts have applied the attorney-work product rule in many different contexts, the question of its applicability in the context of an attorney discipline case is a matter of first impression for our Courts. *See Willis v. Duke Power Co.*, 291 N.C. 19, 229 S.E.2d 191 (1976) (holding that any materials prepared in anticipation for any litigation by a party from whom discovery is sought are protected under the rule of civil procedure governing the scope of discovery); *Hall v. Cumberland County Hospital System*, 121 N.C. App. 425, 466 S.E.2d 317 (1996) (holding that the trial court erred reversibly by releasing certain documents to plaintiffs without addressing defendants' claims that those documents were privileged).

We are, however, aware of a recent decision of the Vermont Supreme Court, which addressed the question presently before this Court—whether a bar investigator's reports and witness interview notes are protected under the attorney-work product rule. *In re PCB*, 708 A.2d 568. In that case, the Vermont Supreme Court determined that witness statements and notes taken by the bar counsel or bar investigator are privileged and not discoverable absent a showing of substantial need and undue hardship and a finding of good cause by the Professional Conduct Board. *See id.* at 571.

As in *In re PCB*, the discovery information requested in the case at bar includes notes and witness statements taken by the State Bar's

investigator. And, the investigator in the case at bar is a representative or agent of the State Bar. *See* N.C. Gen. Stat. § 84-31 (1995) (stating that "the North Carolina State Bar . . . may authorize counsel to employ assistant counsel, investigators . . . in such numbers as it deems necessary. . . ."). Since we are persuaded by the reasoning in *In re PCB*, we hold that the notes and reports in this case were not discoverable until there was a showing by the defendant that he had a "substantial need of the materials in the preparation of his case and that he is unable without undue hardship to obtain the substantial equivalent." N.C.G.S. § 1A-1, Rule 26(b)(3).

Assuming for the sake of argument that the defendant in this case has shown a substantial need of the materials in preparation of his case, he has failed to show that he was unable to obtain the substantial equivalent without undue hardship. In fact, he failed to exercise his right to depose the witnesses who were the subject of the investigator's notes and reports which would have given him the substantial equivalent of the requested information. Since he failed to make the appropriate showing under our attorney-work product rule, the investigator's notes and reports were privileged and not discoverable by the defendant.

Because the investigator's notes and reports were privileged, the Hearing Committee was not required to examine the evidence before ruling on the defendant's motion to compel. *See State v. Hardy*, 293 N.C. 105, 235 S.E.2d 828 (1977) (holding that a judge must order *in camera* inspection when a specific request is made at trial for disclosure of evidence which is in the State's possession and which is obviously relevant, competent and not privileged). Therefore, the Hearing Committee acted properly in denying the defendant's motion to compel.

### B. The State Bar

The defendant next contends that the State Bar erred in: (1) allowing its counsel to answer defendant's interrogatory questions and (2) concealing certain requested evidence.

[2] We find meritless the defendant's contentions that it was improper for the State Bar's counsel to answer the interrogatory questions. Under Rule 33 of our North Carolina Rules of Civil Procedure, governing a party's interrogatories,

> [a]ny party may serve upon any other party written interrogatories to be answered by the party served or, if the party served is a

public or private corporation or a partnership or association or governmental agency, by any officer or agent, who shall furnish such information as is available to the party.

N.C. Gen. Stat. § 1A-1, Rule 33 (1990).

Therefore, the State Bar's counsel, as an agent of that governmental agency, was the proper party to answer the interrogatories.

**[3]** Next, we examine the defendant's contentions that the State Bar concealed evidence including: (1) the identity of Capps' organ teacher, David Craycroft, whose deposition testimony was admitted into evidence and (2) a statement made by Capps' brother, Harold Shelton.

In this case, the record shows that Craycroft was listed as a State Bar witness, via deposition transcript, in the pre-trial stipulations. Craycroft's testimony was introduced into evidence for the limited purpose of showing the 18 January 1997 student roster of the organ class was an authentic business record and to corroborate Capps' testimony as to her whereabouts on that particular day. Although Craycroft had not yet been deposed when the State Bar responded to the defendant's interrogatories, the class roster was listed in response to the interrogatory requesting identification of "each and every document known to plaintiff, its agents, and/or attorney which plaintiff knows or believes may contain [facts] or information relating to the claims asserted in the Complaint and/or the defenses raised in any answer interposed thereto."

Moreover, the record shows that when the State Bar's investigator discussed Capps' case with Shelton, he did not take any notes. Even if he had taken notes during that conversation, the defendant again has failed to comply with the requirement of showing undue hardship in obtaining the substantial equivalent of the requested discovery evidence under Rule 26(b)(3). In short, he could have deposed Shelton, but failed to do so. Therefore, the State Bar did not improperly conceal evidence from the defendant.

Accordingly, we find compliance with due process requirements by both the Hearing Committee and the State Bar.

II. STATEMENTS OF A MEMBER OF THE HEARING COMMITTEE

Next, the defendant argues that the Hearing Committee erred in allowing one its members to: (A) act as a handwriting expert wit-

ness in questioning the State Bar's forensic handwriting expert and (B) offer testimony as to whether the notary certificates on the release and power of attorney were false. We examine each argument separately.

### A. Statements To The State Bar's Handwriting Expert

[4] In support of his argument that one of the Hearing Committee's members acted as a handwriting expert, the defendant points to the following colloquy between the Hearing Committee member and the State Bar's handwriting expert witness:

Q. . . . And I know you said you can't determine who wrote this, but can you look at certain letters and see that they have the same characteristics?

A. I see certain writing habits, the way the letters are formed.

Q. Okay. I happen to have to do some of this in my profession, too. So "High Point Road," "R-D" in Exhibit 30, and its also on your Exhibit 34.

. . .

Q. Mr. Harris's "High Point Road," "R-D," they seem to be extremely similar to me in the down stroke.

A. You mean the "R" in "Road?"

Q. The "D" in "Road."

. . .

Q. The "A" seems to have some similarities.

. . .

Q. The "A" seems to be opened in two or three of his places too.

A. Yes, I agree with you.

Q. The only two "P-P's" I could find where—but he generally does like me, nobody can read his writing, so he prints quite often, but he seems to have this loop in the "P's" the same in the only two I could find.

We do not, however, find the challenged colloquy to be evidence that the Hearing Committee member was acting as an expert witness.

Rather, the colloquy shows that the Hearing Committee member requested that the State Bar's expert witness compare the defendant's known handwriting samples with Capps' purported signature on the release and settlement check. In questioning the expert witness about the comparison between the aforementioned documents, the Hearing Committee ·member merely observed similarities in the way the defendant wrote the letters "d" and "a" in the known writing samples and the manner in which those letters appeared on the release and settlement check. In effect, the Hearing Committee member was not testifying as an expert but was attempting to get the State Bar's expert witness to explain the significance of his observations of the defendant's handwriting as compared to that on the release and settlement check.

In response, the expert noted that there "was no possible way" that Capps could have signed the release. But the expert—despite the questions of the Hearing Committee member regarding the similarities between the defendant's known handwriting samples and the signatures on the release and settlement check—was unable to determine who signed the release and settlement check.

Given the foregoing evidence, we find no error in the Hearing Committee member's questions to the State Bar's expert witness.

## B. Statements About The Notary Certificates

[5] In support of his argument that one of the Hearing Committee's members offered testimony regarding whether the notary certificates on the release and power of attorney were false, the defendant first points out that in North Carolina, there is a presumption that the recitations contained in a notary's certificate or acknowledgment are true. See Johnson Lumber Co. v. Leonard, 145 N.C. 339, 59 S.E. 134 (1907) (holding that proof to impeach a notary's certificate must be clear and convincing). This presumption, however, may be rebutted by clear, cogent, and convincing proof. See id.

Here, the State Bar offered evidence that on 18 January 1997—the day that the defendant's secretary allegedly witnessed Capps sign a release and power of attorney at the defendant's office—Capps was in Largo, Florida. Such evidence included: (1) Capps' signature on the organ lesson's roster, (2) Capps' testimony, (3) the testimony of a friend who had dinner and went to a karaoke lounge with Capps in Florida during the evening of January 18, and (4) an ATM withdrawal slip and a bank statement reflecting her withdrawal of $50.00 on 18 January 1997 from a bank in Florida.

N.C. STATE BAR v. HARRIS

[137 N.C. App. 207 (2000)]

Based on this evidence, the Hearing Committee found that:

30. Defendant allowed Watkins to acknowledge falsely that Capps appeared before Watkins and signed the release on January 18, 1997.

31. Defendant allowed Watkins to acknowledge falsely that Capps appeared before Watkins and signed the limited power of attorney on January 18, 1997.

We find the evidence supporting the Hearing Committee's findings of fact numbers 30 and 31 to be clear, cogent, and convincing proof that the notary certificates of the defendant's secretary were false.

Next, the defendant supports his argument that the Hearing Committee member offered testimony regarding the veracity of the notary certificates by pointing to the Hearing Committee member's statements to the defendant's secretary:

I know at home quite frequently, the secretary in a law firm will sign a power of attorney where they have not actually seen a person. The attorney said they were there, and they walk out to the desk or they are back in the back, and I have witnessed this.

Construing the dialogue between the Hearing Committee member and the defendant's secretary as a whole, we find that the Hearing Committee member was merely asking the defendant's secretary whether the statements in her notary acknowledgment were truthful. The Hearing Committee member, however, prefaced his questions with the above-mentioned statements. Thus, the Hearing Committee member did not himself provide testimony that the information contained in the secretary's acknowledgment was false.

Moreover, even if the Hearing Committee member's statements constituted testimony in support of findings of fact numbers 30 and 31, the resulting error would be harmless because there was other evidence which constituted clear, cogent, and convincing proof to support these findings of fact.

III. THE HEARING COMMITTEE'S FINDINGS OF FACT

Finally, the defendant contends that three of the Hearing Committee's findings of fact were not supported by clear, cogent and convincing evidence drawn from the whole record. We disagree.

"The standard of proof in attorney discipline and disbarment proceedings is one of 'clear, cogent and convincing' evidence." *Sheffield*, 73 N.C. App. at 354, 326 S.E.2d at 323; *see also In re Palmer*, 296 N.C. 638, 252 S.E.2d 784 (1979). "Clear, cogent and convincing describes an evidentiary standard stricter than a preponderance of the evidence, but less stringent than proof beyond a reasonable doubt." *Sheffield*, 73 N.C. App. at 354, 326 S.E.2d at 323. And, it "has been defined as 'evidence which should fully convince.'" *Id.* (quoting *Williams v. Blue Ridge Bldg. & Loan Ass'n*, 207 N.C. 362, 363, 177 S.E. 176, 177 (1934)).

[6] The defendant first asserts that the Hearing Committee erred in finding his bank account balance was below $8,900.00 because the "uncontradicted evidence was that . . . at all time [the] aggregate accounts held in excess of $100,000.00."

However, his assertions are without merit because he has mistakenly focused on his aggregate accounts rather than his operating account which was the basis of the Hearing Committee's findings. The Hearing Committee's specific findings relating to the defendant's assertions are:

39. The balance in Defendant's CCB operating account remained below $8,900.00 from January 22, 1997 to May 19, 1998.

40. At all times when Defendant's bank account balance was below $8,900.00, this amount should have been in Defendant's bank account since no check made payable to Capps in the amount of $8,900.00 had cleared Defendant's bank account.

41. Defendant appropriated $8,900.00 from Capps' Allstate settlement to his own use or benefit.

Clear, cogent and convincing evidence exists in the record to support these findings of fact. For instance, the insurance adjuster who handled the settlement of Capps' claim testified at the hearing that on 23 August 1996 the defendant allegedly acting on Capps' behalf settled the claim for $12,000.00. At that time, however, the adjuster was unaware that the defendant's employment had been terminated, thereby discharging his ability to act on her behalf as an attorney.

Thereafter, on 15 January 1997, the defendant wrote check number 11494 on his Central Carolina Bank operating account to the Internal Revenue Service in the amount of $10,235.89. Six days later, on 21 January 1997, he deposited the following amounts into his oper-

ating account: (1) the $12,000.00 settlement check, (2) a $4,617.19 check and (3) a $10.00 check. That same day, his bank paid check number 11494 to the Internal Revenue Service.

After that check was paid, the balance in the defendant's operating account at Central Carolina Bank remained below $8,900.00—the portion of the settlement owed to Capps—from 21 January 1997 to May 1998. Thus, the defendant appropriated Capps' portion of the settlement for his own use or purpose. *See* Rule 10.1(C) of the North Carolina Rules of Professional Conduct (stating that "[a]ll money or funds received by a lawyer either from a client or from a third party to be delivered all or in part to a client, except that received for payment of fees presently owed to the lawyer by the client or as reimbursement for expenses properly advanced by the lawyer on behalf of the client shall be deposited in a lawyer trust account.")

**[7]** The defendant next challenges the Hearing Committee's finding that "[i]n July 1997, [he] sent a private investigator to Largo, Florida to give $8,900.00 to Capps."

At the hearing, Capps testified that in 1997 a private investigator identifying himself as the defendant's courier called her Florida home stating that "he was going to bring [Capps] a replacement for a lost settlement check." During the conversation, Capps informed him not to come to her home and "any business to do with [the defendant] whatsoever he would do with Mr. Snow, [her] attorney in High Point, North Carolina." Several days later, on 4 July 1997, the investigator came to her home but did not discuss the settlement check at that time.

On appeal, however, the defendant challenges Capps' testimony regarding statements allegedly made by the private investigator during their telephone conversation on the grounds that these statements constituted inadmissible hearsay. But, he failed to object to this testimony during the hearing, thereby waiving his right to present such an error on appeal. *See* North Carolina Rules of Appellate Procedure, Rule 10(b)(1) (stating that "[i]n order to preserve a question for appellate review, a party must have presented to the trial court a timely request, objection or motion, stating the specific grounds for the ruling the party desired the court to make if the specific ground were not apparent from the context. . . .").

Also, the defendant appears to be challenging the credibility of Capps' witness testimony by suggesting that the finding of fact at

issue was not supported by sufficient evidence since the only evidence in support of the finding was Capps' testimony. But, our "review is concerned only with the sufficiency of the evidence, not the credibility of witnesses." *Sheffield*, 73 N.C. App. at 355, 326 S.E.2d at 324. Applying this standard of review, we find that Capps' testimony alone constitutes clear, cogent and convincing proof to support the Hearing Committee's finding regarding the defendant's private investigator.

[8] Lastly, the defendant challenges the Hearing Committee's findings that:

> 53.  Defendant lent or advanced his brother's company's money to three of Defendant's clients as follows: a) Alan Morton-to pay for his surgery; b) Natashia Nelson-to pay her rent and car note; and c) Pamela Moffit-to pay surgery medical expenses, and travel to doctors. The expenses of Alan Morton, Natashia Nelson, and Pamela Moffit were not litigation expenses.

Based on this finding of fact, the Hearing Committee concluded that the defendant "advanced financial assistance of client in violation of Rule 5.3(B) and violated the Rules of Professional Conduct through the acts of another in violation of Rule 1.2(A)." The defendant also challenges the Hearing Committee's conclusion.

Rule 5.3(B) of the North Carolina Rules of Professional Responsibility provides that:

> While representing a client in connection with contemplated or pending litigation, a lawyer shall not advance or guarantee financial assistance to his client, except that a lawyer may advance or guarantee the expenses of litigation, including court costs, expenses of investigation, expenses of medical examination and costs of obtaining and presenting evidence, provided the client remains ultimately liable for such expenses.

Rule 1.2(A) states that it is professional misconduct for a lawyer to "[v]iolate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another . . . ."

In the present case, the undisputed facts are that: (1) the defendant kept $20,000.00 in his trust account for several years which came from his brother's company, Castle McCullough, and (2) he loaned money from his brother's company to three clients: Alan Morton,

Natashia Nelson and Pamela Moffit. In fact, the money was loaned to Morton for his surgery; to Nelson for rent and payments on a car note; and to Moffitt for payment of surgical, medical and travel expenses.

The foregoing facts constitute clear, cogent and convincing proof to support the Hearing Committee's finding that the defendant loaned money to his three clients. Thus, the Hearing Committee's finding adequately supports its conclusion that the defendant violated Rules of Professional Conduct 5.3(B) and 1.2(A); therefore, we uphold the Hearing Committee's ruling in this regard.

Finding the defendant's remaining assignments of error to be either abandoned or without merit, we need not address them on appeal. *See* North Carolina Rules of Appellate Procedure, Rule 28(b)(5).

The order appealed from is,

Affirmed.

Judges MARTIN and HUNTER concur.