THE NORTH CAROLINA STATE BAR v. WILLIAM M. SHEFFIELD, ATTORNEY

No. 8410NCSB477

(Filed 5 March 1985)

1. **Attorneys at Law § 12— disciplinary proceedings—standard of proof—standard of judicial review**

    The standard of proof in attorney discipline and disbarment proceedings is one of clear, cogent and convincing evidence, and the standard for judicial review of such cases is the whole record test.

2. **Attorneys at Law § 12— attorney disciplinary proceeding—evidence sufficient to support finding**

    The evidence in an attorney disciplinary hearing was sufficient to support the Hearing Committee's finding that defendant paid $1,804.40 from a trust account to a specified person on his client's behalf for private investigative services in connection with a criminal trial.

3. **Attorneys at Law § 12— attorney disciplinary hearing—failure to keep records —evidence sufficient to support finding**

    The evidence in an attorney disciplinary hearing was sufficient to support the Hearing Committee's finding that defendant did not keep records from which he could determine at any one time what amount in his trust account belonged to any particular client and that he did not maintain a running balance of the proceeds due the client who filed a grievance against him.

**4. Attorneys at Law § 12— attorney disciplinary hearing—failure to account for settlement proceeds—evidence sufficient to support finding**

The evidence in an attorney disciplinary hearing was sufficient to support a finding by the Hearing Committee that defendant attorney never rendered to his client an accounting of the disbursement of the proceeds of the settlement of a personal injury claim on behalf of the client. None of the three occasions when defendant allegedly discussed finances with the client could properly be considered as an accounting.

**5. Attorneys at Law § 12— attorney disciplinary hearing—acceptance of employment—absence of withdrawal—evidence sufficient to support findings**

The evidence in an attorney disciplinary hearing supported findings by the Hearing Committee that defendant accepted employment in a wrongful death case and that he never withdrew where it tended to show: defendant already represented the client in murder and personal injury cases; the client's father delivered the wrongful death complaint to defendant and defendant told him that the complaint could be worried about later; defendant did not advise the client that he would not represent him in the wrongful death case; defendant wrote the client a letter advising him against filing a counterclaim in the wrongful death action and encouraging him to file for bankruptcy; defendant wrote the client a second letter stating that "I do not see that I can handle this for you for a number of reasons" and asking the client to "come by the office some time this week or next so we can discuss this"; and defendant received two letters from opposing counsel in the wrongful death case, one suggesting that he file an answer and the second inquiring whether defendant represented the client in the case, but defendant never responded to either letter.

**6. Attorneys at Law § 3— attorney-client relationship by implication**

The relationship of attorney and client may be implied by the conduct of the parties and is not dependent on the payment of a fee or the execution of a formal contract.

**7. Attorneys at Law § 6— absence of effective withdrawal from case**

Assuming that defendant attorney had a duty to withdraw from representation of a client in a wrongful death case once the client revealed his intention to commit perjury, defendant did not effectively withdraw from the case where he failed to follow the procedure contained in DR 2-109(A)(2).

**8. Attorneys at Law § 12— attorney disciplinary hearing—failure to maintain records and account for client funds—conclusions supported by findings and evidence**

A conclusion in an attorney disciplinary proceeding by the Hearing Committee that defendant attorney failed to maintain complete records of funds received on a client's behalf and to render appropriate accountings to the client in violation of DR 9-102(B)(3) was supported by evidence and findings that defendant failed to maintain records from which he could determine at any one time what amount in his trust account belonged to a particular client, that defendant did not maintain a running balance of the proceeds due the client and did not render the client an accounting of these proceeds, and the only

**N. C. State Bar v. Sheffield**

trust accout records defendant maintained were check stubs, cancelled checks, and bank statements.

**9. Attorneys at Law § 12— attorney disciplinary proceeding—failure to respond to notice of grievance and subpoena—sufficiency of findings and evidence**

A conclusion by the Hearing Committee in an attorney disciplinary proceeding that defendant failed to respond to a letter of notice of a grievance and a subpoena in violation of G.S. 84-28(b)(3) and engaged in conduct adversely reflecting upon his fitness to practice law in violation of DR 1-102(A)(6) was supported by findings and a stipulation that defendant failed to respond to either the letter or subpoena, there being no requirement that such failure be willful or intentional.

**10. Attorneys at Law § 11— attorney disciplinary hearing—exclusion of character testimony**

The Hearing Committee in an attorney disciplinary proceeding did not err in excluding testimony offered to prove character, habit and customary professional practices of defendant attorney since the Committee was to determine whether defendant had committed specific acts, not whether he was generally fit to practice law, and his character was not at issue. Also, testimony by defendant's former law partner concerning defendant's ability as a courtroom lawyer was properly excluded on the ground of remoteness where the witness in 1978 had moved away from the city in which defendant practiced.

**11. Attorneys at Law § 11— attorney disciplinary hearing—exclusion of affidavit of unavailable witness**

The Hearing Committee in an attorney disciplinary hearing did not err in excluding the affidavit of an unavailable witness offered to impeach the credibility of the client who filed the grievance against defendant since the affidavit of an unavailable witness is not automatically admissible into evidence; defendant never attempted to have the witness's deposition taken so that the State Bar would have an opportunity to cross-examine him; and the affidavit was for corroborative purposes only.

**12. Attorneys at Law § 11— attorney disciplinary hearing—impeachment testimony—exclusion not prejudicial error**

Defendant attorney was not prejudiced by the Hearing Committee's erroneous exclusion of an officer's testimony that the client who filed the grievance against defendant had a criminal record and was under investigation for illegal drug activities where it was already before the Committee that the client had been tried for second-degree murder, and a second witness thereafter testified concerning the client's involvement with drug activities.

APPEAL by defendant from the Hearing Committee of the Disciplinary Hearing Commission of the North Carolina State Bar. Order entered 17 October 1983. Heard in the Court of Appeals 9 January 1985.

*David R. Johnson for plaintiff appellee North Carolina State Bar.*

*Gary K. Berman for defendant appellant.*

BECTON, Judge.

### I

On 4 May 1983, plaintiff, The North Carolina State Bar, filed a Complaint against defendant, William M. Sheffield, a practicing attorney, based upon the grievance of Billy Wayne Fowler, a former client of defendant. A hearing was held before a Hearing Committee of the Disciplinary Hearing Commission of the State Bar on 15, 16 and 22 September 1983. Based upon its findings of fact and conclusions of law, the Committee entered an order of discipline, suspending defendant from the practice of law for a period of three years. Defendant appealed, arguing that certain findings of fact were not supported by clear, cogent and convincing evidence; that certain conclusions of law were not properly supported by the findings; that it was error to exclude certain evidence offered by defendant; and that it was error for the Commission to conclude that defendant had violated any Disciplinary Rules of the Code of Professional Responsibility, and to enter an order imposing discipline. We have carefully examined the record of the proceeding below, and the orders based thereon, and find them free from error. We therefore affirm.

### II

Factual Background

Defendant was admitted to the bar in North Carolina in September 1972, and at all times pertinent to this action maintained a law office in Durham, North Carolina. Three separate lawsuits involving Billy Wayne Fowler (Fowler) are connected with the grievance Fowler ultimately filed against defendant. The first lawsuit arose from a 19 June 1979 automobile accident in which Fowler was injured. Shortly thereafter, defendant was offered employment in that case by Fowler's father. Defendant accepted on a contingency fee basis, and in August 1979 notified the other driver's insurance carrier that he was representing Fowler. Fowler and his father both periodically brought bills arising from the accident to the defendant.

On 19 June 1980, while settlement negotiations in the personal injury suit were still ongoing, Fowler was arrested and charged with the murder of Tony Holland and assault with a deadly weapon with intent to kill inflicting serious injury on Terry Holland. Fowler's father immediately contacted defendant about representing his son on the criminal charges. Defendant accepted the employment and subsequently requested and received two separate payments of $1,000 each from Fowler's father on 23 June and 3 July 1980. Although Fowler denies ever discussing fees for the criminal case with the defendant, the defendant testified, and the Committee found as a fact, that the defendant and Fowler agreed that defendant would represent him on the criminal charges for a fee of $25,000. The criminal case was tried in February 1981. Defendant appeared as counsel for Fowler, who was acquitted of all charges against him.

On or about 13 August 1980, defendant and the insurance company had agreed to settle the personal injury claim for $40,000. Defendant delivered a draft to Fowler at the Orange County jail on 15 August 1980. Fowler executed a release, endorsed the draft, and returned the documents to defendant, who deposited the draft that same day in a checking account labelled a "trust account." Between 15 August and 29 October 1980, the date of the next deposit, defendant wrote four checks from the account totalling $9,371.34, which he noted were for payment of fees from Fowler, numerous checks to pay business and personal obligations totalling in excess of $21,000, and a check for $1,000, of which approximately $25 was used for Fowler's benefit.

On 28 October 1980, a complaint in a wrongful death action was filed against Fowler by Patricia Holland, Tony Holland's widow and the administratrix of his estate. The Complaint was delivered to defendant's office by Fowler's father. Defendant did not respond to subsequent inquiries from opposing counsel as to whether he represented Fowler in this matter. No responsive pleading was ever filed and a default judgment for $200,000 was ultimately entered against Fowler.

On 24 August 1982, Fowler filed a grievance against the defendant with the Grievance Committee of the North Carolina State Bar concerning defendant's handling of funds in the personal injury case and his representation in the wrongful death ac-

tion. On 5 October 1982, defendant received that Committee's Letter of Notice, giving him 15 days to respond to the grievance filed against him; however, defendant never responded to this letter. On 23 March 1983, defendant was served with a subpoena by the Committee requiring him to appear and produce his records with regard to his representation of Fowler. The subpoena directed his appearance on 6 April 1983. The parties stipulated that defendant failed to appear in response to the subpoena or make any other response to the Committee prior to 6 April 1983. This action was filed by the State Bar on 4 May 1983.

### III

[1] Defendant's central argument on this appeal is that six of the Committee's findings of fact were not supported by clear, cogent and convincing evidence drawn from the whole record. The standard of proof in attorney discipline and disbarment proceedings is one of "clear, cogent and convincing" evidence. Rules of the North Carolina State Bar, Art. IX, Sec. 14(18). *See In re Palmer*, 296 N.C. 638, 252 S.E. 2d 784 (1979) (adopting standard). Clear, cogent and convincing describes an evidentiary standard stricter than a preponderance of the evidence, but less stringent than proof beyond a reasonable doubt. *In re Montgomery*, 311 N.C. 101, 316 S.E. 2d 246 (1984). It has been defined as "evidence which should fully convince." *Williams v. Blue Ridge Bldg. & Loan Ass'n*, 207 N.C. 362, 177 S.E. 176 (1934).

The standard for judicial review of attorney discipline cases is the "whole record" test. *N.C. State Bar v. DuMont*, 304 N.C. 627, 286 S.E. 2d 89 (1982). This test requires the reviewing court to

consider the evidence which in and of itself justifies or supports the administrative findings and . . . also [to] take into account the contradictory evidence or evidence from which conflicting inferences can be drawn. . . . Under the whole record test there must be substantial evidence to support the findings, conclusions and result. . . . The evidence is substantial if, when considered as a whole, it is such that a reasonable person might accept as adequate to support a conclusion.

*Id.* at 643, 286 S.E. 2d at 98-9 (citations omitted). *See Thompson v. Wake County Bd. of Educ.*, 292 N.C. 406, 233 S.E. 2d 538 (1977)

(reviewing court cannot substitute its judgment for that of the agency as between two reasonably conflicting views, although court could justifiably reach a different result). Applying the "whole record" test to the contested findings of fact, we find each of them supported by clear, cogent and convincing evidence.

Before discussing the individual findings, defendant contrasts at length his own credibility as opposed to Billy Fowler's credibility in an effort to discredit Fowler's testimony. Defendant argues that because each disputed finding is supported exclusively by Fowler's testimony, and because Fowler is an inherently incredible witness, the findings could not have been supported by clear, cogent and convincing evidence. The underlying premise of defendant's argument, that Fowler's testimony alone is the basis for the findings, is faulty. First, other evidence supports each of the findings. Second, defendant's argument mistakenly assumes that the credibility of witnesses is a matter properly before this Court. Our review is concerned only with the sufficiency of the evidence, not the credibility of witnesses. *See State ex rel. Comm'r of Ins. v. Rate Bureau*, 300 N.C. 381, 269 S.E. 2d 547, *reh'g denied*, 301 N.C. 107, 273 S.E. 2d 300 (1980) (credibility of witnesses and probative value of particular testimony are for administrative body to determine).

[2]   We turn to the individual findings. Defendant first contends that the Committee erred in finding that defendant paid $1,804.40 from the trust account to John Myers on Fowler's behalf for private investigative services in connection with the criminal trial. Although appellant stipulated to this finding before trial, he seems to suggest it is deceptive because Myers was paid a total sum greater than $1,804.40. The uncontroverted evidence is that Myers received $1,804.40 *from the trust account*. Plainly, the finding is neither false nor deceptive, as it expressly relates to an amount paid Myers from the trust account, and not from other sources.

[3]   The Committee found that:

The Defendant did not keep records from which he could determine at any one time what amount in his trust account belonged to any particular client. The Defendant did not maintain a running balance of the proceeds due Fowler.

Not only is this finding supported by competent evidence, nothing in the record supports a contrary conclusion. Defendant stipulated to the following:

> The only trust account records maintained by the defendant were the check stubs, cancelled checks, and bank statements. The defendant did list fees and expenses on the file folder of the client's file but *did not maintain any ledgers or other records showing a running balance of an individual client's funds.* (Emphasis added.)

Defendant's argument does not even address the substance of the challenged finding. Defendant asserts that at the time of the deposit of the $40,000 settlement proceeds in defendant's trust account, Billy Fowler owed him a $13,333.33 contingency fee in the personal injury case, and a $25,000 fee for representing Fowler on the criminal charges. Defendant maintains that, based on these figures, it was "obvious" what the balance due Fowler was at any given time. This contention is hollow. Whether determining the balance was a simple or complex calculation, the undisputed evidence is that no records indicating the balance due were ever kept.

[4] The Committee also found that defendant never rendered an accounting of the disbursement of the settlement proceeds. While Billy Fowler denied ever having received such an accounting, the defendant points to three occasions when he discussed finances with Fowler as proof that he rendered an accounting. He testified that in August 1980, when he brought the insurance settlement draft to Fowler, he discussed with Fowler "what we had gotten, and where it was going and how much was left." Defendant introduced the voucher portion of the insurance draft into evidence. A handwritten calculation on the voucher shows the total amount of proceeds, less defendant's fees for the personal injury and criminal cases, and a remaining amount of $1,666.67. Defendant testified these notations were made during his conversation with Fowler.

Defendant further testified to a "fairly simple accounting" given Fowler in December 1980, when defendant claimed he agreed to represent Billy Fowler's brother Danny. Defendant testified that this accounting disclosed a balance of less than $1,000. Finally, defendant stated that during jury deliberations at

Fowler's criminal trial in February 1981, he and Fowler went over some figures in writing. None of the three alleged account-ings ever considered the $2,000 paid to defendant by Billy Fowler's father for investigative work. In our view, none of these three transactions between defendant and Fowler can be con-sidered an accounting, and the Committee did not err, based on the whole record, in finding that defendant had never rendered an accounting.

[5] The defendant next challenges two related findings of fact. The first finding recites that in November 1980, the defendant ac-cepted the Complaint in the wrongful death action delivered to him by Billy Fowler's father, and that

> defendant did not advise either Fowler's father or Fowler that he would not represent him in the civil action at that time or prior to the criminal trial. Defendant accepted employment in the civil wrongful death action and the rela-tionship of attorney and client was established between the defendant and Billy Wayne Fowler with respect to the defense of such action.

The second finding reiterates that defendant did not advise Fowler that he would not represent him, and adds that defendant did not respond to the inquiries of opposing counsel regarding the case, and that "Fowler believed the Defendant was handling the civil action appropriately."

Defendant admits that the wrongful death complaint was left at his office by Billy Fowler's father in November 1980, and that he told the elder Fowler that the Complaint could be worried about later. Although defendant testified otherwise, Billy Wayne Fowler stated that defendant never notified him he was not handling the action, and that about a week after his acquittal on the murder charges, Fowler asked the defendant "how everything was coming along" and the defendant responded that "everything was going beautifully."

Defendant maintains that a few days after the acquittal, Fowler informed him that he intended to perjure himself in con-nection with the wrongful death case, and for that reason, defend-ant testified that he told Fowler at least twice he would not represent him, and sent him two letters to the same effect. De-

fendant's position seems to be either that he never accepted employment in this case, or that in any event he withdrew upon discovering his client's intention to commit perjury. We find ample evidence to support both that defendant accepted employment in the wrongful death case, and that he never withdrew.

[6]   As to whether defendant accepted employment, we observe that the relation of attorney and client may be implied from the conduct of the parties, and is not dependent on the payment of a fee, nor upon the execution of a formal contract. *E. F. Hutton & Co. v. Brown*, 305 F. Supp. 371 (S.D. Tex. 1969). The dispositive question, then, is not, as defendant suggests, whether there was an express verbal agreement between the parties, or whether the attorney-client relationship in the wrongful death case was established in the same manner as in the earlier cases defendant handled for Fowler, but, rather, whether defendant's conduct was such that an attorney-client relationship could reasonably be inferred. The elder Fowler's delivery of the Complaint to defendant's office, in light of the fact that defendant was already representing Billy Fowler on other matters and that he never told Billy Fowler he would not be representing him in the wrongful death case, is some evidence of an attorney-client relationship. At least one court has reached this conclusion on markedly similar facts. *Rice v. Forestier*, 415 S.W. 2d 711 (Tex. Civ. App. 1967) (where citations left at attorney's office by client, and attorney never declined to represent client, attorney had duty to inform client he was not going to file an answer), and, in this case, there is even more evidence supporting the Committee's finding of an attorney-client relationship.

The two letters written by defendant to Fowler further indicate that defendant accepted employment, and no indication that he declined it. The first letter advises Fowler against filing a counterclaim in the wrongful death action, and also encourages him to file for bankruptcy. *See Togstad v. Vesely, Otto, Miller & Keefe*, 291 N.W. 2d 686 (Minn. 1980) (rendering of legal advice establishes attorney-client relationship). *Accord Hunt v. Disciplinary Bd. of the Ala. State Bar*, 381 So. 2d 52 (Ala. 1980). The second letter, dated 23 March 1981, states in reference to the lawsuit that "I do not see that I can handle this for you for a number of reasons," and adds, "[p]lease come by the office sometime this week or next so we can discuss this." At best, this

letter bespeaks a somewhat equivocal intention on defendant's part to end his involvement with the lawsuit. It is not the legal equivalent of withdrawing from representation. *See* Code of Professional Responsibility of the N. C. State Bar, DR 2-109(A)(2) (procedure for withdrawal).

Furthermore, it is established by uncontroverted evidence and defendant's own admissions that he received two letters from opposing counsel in the lawsuit dated 16 March 1981 and 26 May 1981. The first letter informed defendant of the trial date and then requested he file an answer. Defendant never responded. The second letter simply requests: "Please let me know whether you represent Billy Wayne Fowler in connection with this." Defendant never replied to this letter, either. Thus, even taking into account defendant's testimony that he told Fowler he would not represent him in this matter, the whole record contains substantial evidence supporting each aspect of the two challenged findings.

IV

[7] Defendant next assigns error to three conclusions of law made by the Committee in that they were supported by neither findings nor evidence. The first of the challenged conclusions reads:

By failing to file a responsive pleading or otherwise take action on behalf of Fowler in the civil wrongful death action, the Defendant has neglected a legal matter entrusted to him and has intentionally failed to carry out a contract of employment in violation of Disciplinary Rules 6-101(A)(3) and 7-101 (A)(2) of the Code of Professional Responsibility of The North Carolina State Bar.

Defendant's position that this conclusion is erroneous is premised on his earlier argument that he never entered into a contract of employment. We have discussed how an attorney-client relationship was established between defendant and Billy Wayne Fowler as to this wrongful death case. Defendant nevertheless contends that, even if there were a valid contract of employment, he was ethically constrained from carrying it out once Fowler revealed his intention to commit perjury. DR 7-102. Assuming defendant had a duty to withdraw, we have already

reviewed the pertinent facts at length, *supra*, and are satisfied that defendant never actually withdrew from the case. DR 2-109 (A)(2) contains the procedure by which an attorney may withdraw from a case. This procedure was not followed by the defendant.

[8]   The Committee next concluded that the defendant failed to maintain complete records of the funds received on Fowler's behalf and render appropriate accountings to Fowler in violation of Disciplinary Rule 9-102(B)(3). This conclusion of law is based on findings that the defendant failed to maintain records from which he could determine at any one time what amount in his trust account belonged to a particular client, that defendant did not maintain a running balance of the proceeds due Fowler, and that he did not render Fowler an accounting of these proceeds. As discussed earlier, all these findings were supported by sufficient evidence. Defendant stipulated that the only trust account records he maintained were check stubs, cancelled checks, and bank statements. The minimal record-keeping requirements of Disciplinary Rule 9-102(B)(3) concerning receipt and disbursement of funds include keeping a running balance of the funds kept in a trust account for a particular person. This conclusion is thus fully substantiated by findings based on sufficient evidence.

[9]   The final conclusion of law to which defendant assigns error states:

> By failing to respond to both the Letter of Notice and the subpoena the Defendant has failed to respond to a formal inquiry of The North Carolina State Bar in violation of N.C. G.S. Sec. 84-28(b)(3) and has engaged in conduct adversely reflecting upon his fitness to practice law in violation of Disciplinary Rule 1-102(A)(6) of the Code of Professional Responsibility of The North Carolina State Bar.

Defendant stipulated that he failed to respond to either the letter or subpoena, which stipulations were embodied, nearly verbatim, in the Committee's findings. Defendant testified that he did not read the letter, and was somehow unaware of the return date on the subpoena. He argues that his failure to respond was not willful, but excusable, and that therefore the Committee's conclusion is erroneous. This argument is meritless. Defendant stipulated to his failure to respond. There is no requirement of either N.C. Gen. Stat. Sec. 84-28(b)(3) (1981) or Disciplinary Rule

1-102(A)(6) that such failure be willful or intentional. This conclusion is entirely accurate.

## V

[10]   The defendant next makes several assignments of error concerned with the Committee's exclusion of certain testimonial and affidavit evidence. Defendant first argues that it was error to exclude the testimony of five witnesses, including defendant himself, on the theory that the proffered testimony was admissible to prove character, habit and customary professional practices of the defendant. Defendant initially observes that the rules of evidence are relaxed in a disciplinary hearing, modeled as it is after a non-jury trial in a civil case. Rules of the North Carolina State Bar, Art. IX, Sec. 14(12); *In re Elkins*, 308 N.C. 317, 302 S.E. 2d 215, *cert. denied*, --- U.S. ---, 78 L.Ed. 2d 685, 104 S.Ct. 490 (1983) (administrative proceedings generally). He then argues that since the Committee was charged with determining his fitness to practice law, his character was at issue, and as the standard for admissibility of evidence in these proceedings is lenient, the testimony should have been admitted.

Once again, defendant proceeds from a flawed premise. The Committee was to determine whether defendant had committed the specific acts alleged in the Complaint, not whether he was generally fit to practice law. Thus, his character was not at issue. Furthermore, three of the witnesses were asked about defendant's withdrawal from representing clients in other situations. Whether defendant would have been justified in withdrawing from the wrongful death case is irrelevant; the salient point is that he never withdrew. Also, these witnesses *were* permitted to state their opinion as to defendant's character and reputation. Similarly, although defendant was not allowed to testify about any specific case from which he withdrew, he was allowed to testify generally as to how he handled these situations. Finally, a former law partner of defendant was not allowed to testify on the subject of defendant's ability as a courtroom lawyer. As this witness moved away from Durham in 1978, the Committee properly excluded this testimony as being too remote to bear upon the incidents in question. Furthermore, defendant's counsel failed to preserve this testimony for purposes of appellate review.

Defendant also submits that it was reversible error to exclude from evidence four affidavits offered by defendant. We disagree. Three of the affidavits were offered to show the good character of defendant, the fourth, by Hudson, to impeach the credibility of Billy Fowler. Affidavits are generally inadmissible as evidence during trial, as they are an inherently weak method of proof, prepared without notice and without opportunity for cross examination. *In re Griffin*, 6 N.C. App. 375, 170 S.E. 2d 84 (1969). Even if affidavit evidence was somehow appropriate in these proceedings, the three character affidavits were not admissible as the defendant's character was not at issue. Significantly, the Committee, in ruling that these affidavits were not admissible on the question of misconduct, stated that if the question of discipline were reached, it would be willing to consider character affidavits. *See* Rules of the North Carolina State Bar, Art. IX, Sec. 14 (19). The affidavits, however, were never resubmitted.

[11] As to Hudson's affidavit, defendant argues that as he was an unavailable witness, his affidavit should have been admitted. Not only is the affidavit of an unavailable witness not automatically admissible into evidence, we note that defendant never attempted to have Hudson's deposition taken, which would have provided the State Bar with an opportunity to cross-examine. Finally, defendant concedes Hudson's affidavit was for corroborative purposes only. For all the foregoing reasons, it was not error to exclude it.

[12] Finally, an objection was sustained to a question put to Durham police officer Nicholas Then concerning Billy Fowler's reputation. Officer Then testified out of the Committee's hearing that Fowler had a criminal record and was under investigation for illegal drug activities. Defendant contends that it was reversible error to exclude this testimony. Although this objection should probably have been overruled, as character testimony concerning a person's reputation is admissible to impeach a witness, we do not believe the defendant was prejudiced by the failure to overrule the objection. It was already before the Committee that Fowler had been tried for second degree murder, and another witness testified later on in the hearing concerning Fowler's involvement with drug activities.

## VI

Based on the foregoing, we summarily reject defendant's final two arguments that the Committee erred in its conclusion that the defendant's conduct violated disciplinary rules and that it erred in entering an order imposing discipline. Defendant received a fair hearing, free from error. We accordingly

Affirm.

Judges JOHNSON and COZORT concur.