THE NORTH CAROLINA STATE BAR, Plaintiff,
v.
MICHAEL H. McGEE, ATTORNEY, Defendant.
No. COA08-995.
Court of Appeals of North Carolina.
Filed May 19, 2009.
This case not for publication
Katherine Jean and David R. Johnson for the North Carolina State Bar.
Michael H. McGee, pro se.
PER CURIAM.
Michael H. McGee (defendant) appeals an Order Denying Reinstatement issued by a panel of the North Carolina State Bar Disciplinary Hearing Committee (DHC) and denial of defendant's motion for a new hearing. After careful review, we affirm.

I. Background.
Defendant, a 1971 graduate of the University of North Carolina School of Law, was admitted to the North Carolina Bar and practiced law in North Carolina until his suspension on 1 October 2004. 2002, the DHC disciplined defendant for several instances of misconduct, including filing a motion with this Court asking to file an amicus brief in a former client's appealwhere that client alleged ineffective assistance of counsel on defendant's partthat alleged his former client's new counsel's appeal "may be a reflection . . . of unresolved anger at some adult situation such as being raped." Among other things, the DHC also found that defendant created and attached a printout from a fake website in a memorandum to the federal district court indicating that a federal judge  the judge who was presiding over defendant's pro se suit against the IRS, CIA, FBI, and various other state and federal entities  was a pedophile and engaged in sodomy, which was false. Id. Defendant received a reprimand for these actions.
In 2004, defendant again found himself before the DHC to answer for misconduct relating to his 1999 petition under Chapter 7 of the federal bankruptcy code. In identifying his assets and their value in his petition, defendant listed a rental home worth $21,000.00 with $3,100.00 in equity. In reality, the home was worth at least $28,500.00, with an appraised tax value of $40,000.00. The DHC found that defendant knew the true value of the home at the time of his petition. Also, with a motion to release the home from the bankruptcy estate and a separate motion to turn the property over to the trustee pending before the bankruptcy court, defendant obtained a new mortgage on the house for $49,000.00 and executed a deed of trust on the property to secure that loan. By doing so, defendant represented to the lender that he had authority to use the rental house as security at a time when he knew the property was still part of the bankruptcy estate.
Based on these findings of fact, the DHC concluded that defendant engaged in criminal acts that adversely reflect on his honesty, trustworthiness, or fitness as a lawyer contrary to Rule 8.4(b) of the North Carolina Rules of Professional Conduct and entered an Order of Discipline suspending defendant from the practice of law for five years. However, the order allowed defendant to petition for stay of the suspension after three yearsprovided he complied with specific conditions. The order required defendant to abstain from the practice of law, pay the costs of the disciplinary hearing, understand the Rules of Professional Conduct, and "show by clear, cogent, and convincing evidence that [defendant] has reformed and presently possesses the moral qualifications for admission to practice law" and "that permitting [defendant] to resume the practice of law will not be detrimental to the integrity and standing of the Bar, the administration of justice, or the public interest," among other conditions.
Defendant did not appeal the decision of the DHC. Instead, he filed suit against the North Carolina Bar and individually against various persons involved in his multiple disciplinary hearings, requesting $1,300,000.00 for alleged violations of his constitutional rights. The suit was dismissed upon motion to dismiss for failure to state a claim upon which relief could be granted. Roughly six months following the dismissal, in November 2007, defendant petitioned for a stay of suspension as well as the removal of his two orders of discipline from the public record. Following an evidentiary hearing held in February 2008, the DHC concluded that defendant did not meet his burden of showing that a stay of suspension was warranted and issued an order denying reinstatement in March 2008. The DHC based its denial on findings that defendant "refuse[d] to acknowledge any wrongfulness in the dishonest conduct that caused his suspension," engaged in the practice of law on several occasions during his suspension, and never paid the costs of his prior disciplinary proceeding. The DHC also denied defendant's petition to remove his past orders of discipline from the public record. Defendant's subsequent motion for a new trial, alleging retaliation against him for his prior federal lawsuit and various other errors with the DHC's decision, was also denied. Defendant appealed the DHC's decision to this Court in April 2008.

II. Standard of review.
We first note that "[t]he standard for judicial review of attorney discipline cases is the `whole record' test." N.C. State Bar v. Sheffield, 73 N.C. App. 349, 354, 326 S.E.2d 320, 323 (1985) (citing N.C. State Bar v. DuMont, 304 N.C. 627, 286 S.E.2d 89 (1982)).
This test requires the reviewing court to consider the evidence which in and of itself justifies or supports the administrative findings and . . . also [to] take into account the contradictory evidence or evidence from which conflicting inferences can be drawn. . . . Under the whole record test there must be substantial evidence to support the findings, conclusions and result. . . . The evidence is substantial if, when considered as a whole, it is such that a reasonable person might accept as adequate to support a conclusion.
Id. (quoting DuMont, 304 N.C. at 643, 286 S.E.2d at 98-99) (internal quotations omitted; alterations in original). "Ultimately, the reviewing court must apply all the aforementioned factors in order to determine whether the decision of the lower body, e.g., the DHC, has a rational basis in the evidence."N.C. State Bar v. Talford, 356 N.C. 626, 632, 576 S.E.2d 305, 310 (2003) (quotations and citations omitted). Our Supreme Court has held that
the following steps are necessary as a means to decide if a lower body's decision has a "rational basis in the evidence": (1) Is there adequate evidence to support the order's expressed finding(s) of fact? (2) Do the order's expressed finding(s) of fact adequately support the order's subsequent conclusion(s) of law? and (3) Do the expressed findings and/or conclusions adequately support the lower body's ultimate decision?
Id. at 634, 576 S.E.2d at 311. Accordingly, we approach defendant's case using these steps outlined by our Supreme Court. Defendant makes additional arguments, which we address following our Talford analysis.

III. Talford analysis.

A. There is adequate evidence to support the order's findings of fact.
Defendant argues that the DHC erred by making the following findings of fact[1]: (1) defendant failed to pay the costs of the original disciplinary hearing; (2) defendant failed to show remorse and rehabilitation for having committed criminal acts; (3) defendant's medical condition was not a significant factor in his bad behavior, and, thus, defendant's behavior was the result of moral failure and criminal acts. After careful review of the whole record, we conclude that all of the findings of fact  challenged and unchallenged  are supported by clear, cogent, and convincing evidence.
1. Failure to pay costs. The DHC found that defendant failed to pay the costs of his original suspension hearing. Defendant argues that he was indigent at the conclusion of the proceedings, that his debt was discharged in bankruptcy months later, and that the State Bar is prohibited from collecting those costs now. Additionally, he alleges that the State Bar committed prosecutorial misconduct by suggesting that the DHC could consider defendant's failure to pay those costs in its deliberations.
"Misconduct by any attorney shall be grounds for . . . [s]uspension . . ., any portion of which may be stayed upon reasonable conditions to which the offending attorney consents[.]" N.C. Gen. Stat. § 84-28(c)(2) (2007). The DHC "may hold hearings in discipline . . . matters, make findings of fact and conclusions of law after these hearings, enter orders necessary to carry out[its duties], and tax the costs to an attorney who is disciplined[.]" N.C. Gen. Stat. § 84-28.1(b) (2007). Accordingly, whether a suspension may be stayed is discretionary, and, should the DHC decide to provide a disciplined attorney with a path to stay his suspension, it may require the attorney seeking relief to fulfill certain reasonable conditions. N.C. Gen. Stat. § 84-28(c) (2007). If the suspended attorney thinks that the conditions are unreasonable, he may appeal any final order of the DHC to this Court. N.C. Gen. Stat. § 84-28(h) (2007).
Defendant does not dispute his failure to pay the costs of his disciplinary proceeding within the time allotted by the order of suspension. Instead, he argues that he lacked sufficient funds to pay the costs at the time of his hearing. Even so, defendant's failure to appeal the payment of cost requirement following entry of the order of discipline forecloses our review of the condition's reasonableness now. When a party fails to appeal a ruling on a particular issue, he is then bound by that failure and may not revisit the issue in subsequent litigation.See N.C.R. App. R. 10(b)(1) (2008) ("In order to preserve a question for appellate review, a party must have presented to the trial court a timely request, objection or motion, stating the specific grounds for the ruling the party desired the court to make[.]"); McCallum v. N.C. Coop. Extension Serv., 142 N.C. App. 48, 51, 542 S.E.2d 227, 231 (2001) ("Under collateral estoppel, parties are precluded from retrying fully litigated issues that were decided in any prior determination, even where the claims asserted are not the same.")(citation omitted). The procedures governing appeals from DHC decisions are the same as those provided for appeals in civil cases. N.C. Gen. Stat. § 84-28(h) (2007). Under N.C.R. App. P. 18(b)(2), appeals of right from administrative agencies such as the State Bar must be filed within thirty days of receipt of the final agency order. N.C.R. App. P. 18(b)(2) (2008). Defendant filed no such appeal of his suspension.
Defendant's claims that he could not afford to file an appeal to his original suspension and that the assessed costs were later discharged in bankruptcy have no bearing on the matter at hand. Although appeal from a DHC decision is a statutorily provided right, that right is not absolute or required by constitutional due process. In re Vandiford, 56 N.C. App. 224, 227, 287 S.E.2d 912, 914 (1982). Defendant's failure to appeal his suspension is not excused simply because defendant felt the cost of doing so was prohibitive. North Carolina has in place several provisions that allow indigent defendants, even in civil cases, to avoid the costs associated with trial transcripts and bond deposits. See, e.g., N.C.R. App. P. 7(a) (2008) ("where there is an order establishing the indigency of a party entitled to appointed appellate counsel, the ordering of the transcript shall be as in criminal cases," where indigent appellants pay nothing for transcripts). Nothing in the record indicates that defendant was ever judicially determined indigent or that he took any steps to have the DHC or any court make such a determination. Because he did not avail himself of the statutorily provided methods of access to the courts afforded indigent persons, he may not now seek relief based upon that status.
Also, that defendant's debt to the State Bar was discharged in bankruptcy outside of the time period provided for fulfilling the DHC's condition for granting stay of suspension is irrelevant. As mentioned above, the DHC may condition the granting of stay of suspension on reasonable conditions. Again, because defendant failed to appeal that condition when it was originally imposed by the DHC, he may not challenge its reasonableness now. At this stage, when defendant has appealed from denial of a stay of suspension, we may only examine whether, upon an examination of the whole record, the evidence supports the DHC's finding of fact and conclusion of law that defendant failed to comply with a condition for granting stay  in this case, the payment of costs within sixty days of service of the statement of costs. Regardless of why defendant failed to pay those costs, by his own admission, the payment was not made. Therefore, the DHC's finding of fact and conclusion of law as to defendant's failure to pay was based upon adequate evidence and did not constitute error.
Defendant also argues that, by suggesting the DHC could consider defendant's failure to pay the costs, the State Bar's counsel committed prosecutorial misconduct which was "a prima facie violation of the federal bankruptcy code," presumably because defendant's debt was discharged in bankruptcy. However, by failing to pay the costs of his suspension hearing within sixty days of the service of cost, defendant failed to fulfill a condition necessary for the DHC to grant his petition for stay; whether that condition was fulfilled was a matter properly before the DHC. Accordingly, we find that defendant was not unfairly prejudiced by the State Bar discussing defendant's failure to fulfill a condition necessary for granting the stay. Moreover, defendant's characterization of the State Bar's argument as an attempt at debt collection is untenable. The purpose of the hearing was not to collect defendant's discharged debt, but rather to determine whether he was deserving of re-admission to the bar. We find no conduct in the record indicating a violation of any laws or procedures  including the federal bankruptcy code  on the part of the State Bar or the DHC.
2. Failure to show remorse and rehabilitation. Defendant bore the burden of showing by clear, cogent, and convincing evidence that he had reformed and that allowing him to resume the practice of law would not be detrimental to the integrity and standing of the bar, the administration of justice, or the public interest. See N.C. Gen. Stat. § 84-28(h) (2007) ("The procedures governing any appeal shall be as provided by statute or court rule for appeals in civil cases."). The DHC found that defendant did not satisfy this burden based upon its findings that defendant "still steadfastly refuses to acknowledge any wrongfulness in the dishonest conduct that caused his suspension" and that "he was only able to acknowledge that he had made mistakes, mostly in relationships with those in authority." Defendant's own testimony at the hearing is sufficient to sustain the DHC's finding. At that hearing, defendant continued to dispute the validity of his suspension. He testified, "The 2004 decision of this Committee, which is the direct subject of this proceeding, cavalierly and without shame violates every known Constitutional provision and case law with regard to the handling of a criminal matter. It's just unbelievable." Then, on cross-examination, in response to whether he still believed the original suspension order findings were incorrect, defendant responded, "Yes, by constitutional  yes, incorrect." This testimony is clear, cogent, and convincing evidence supporting the DHC's findings of fact that defendant still does not appreciate the wrongful nature of his prior actions.
3. Medical condition. Defendant also argues that a heart condition at the time of his of his original hearing was the cause of his bad behavior and that the DHC "denied" that it was a significant cause of that behavior. However, the record indicates that defendant was back to normal health by the time of his petition for stay. Therefore, that he suffered from a condition in the past does nothing to account for his present failure to recognize his past wrongdoings and thus were not relevant to the DHC's decision.

B. The findings of fact support the conclusions of law.
Defendant argues that the DHC made the following improper conclusions of law: (1) defendant engaged in the unauthorized practice of law, in violation of the order of discipline; (2)defendant failed to pay the costs of the original disciplinary hearing, in violation of the order of discipline; (3) defendant failed to show by clear, cogent, and convincing evidence that he had reformed and possessed the moral qualifications for re- admission to the bar; (4) defendant did not understand the current rules of professional conduct; and (5) the DHC did not have the authority to strike defendant's two earlier orders of discipline (02 DHC 2 and 04 DHC 21) from the public record.
1. Unauthorized practice of law. Defendant challenges the DHC's conclusion of law that he failed to prove that he did not engage in the practice of law during his suspension, in contravention of the conditions for stay. Review of the record reveals that the conclusion was based upon the following findings: (1) while suspended and living in New York, defendant reactivated a dormant North Carolina corporation named "Law You Can Trust, Inc"; (2) while suspended and living in Illinois, defendant used letterhead that identified him as an "Economic and Legal Consultant"; (3) while suspended and living in New York, defendant drafted a legal document titled "Agreement" for Bears2TGo LLC and provided the document to the business owner; and (4) while suspended and living in Illinois, defendant prepared suggested revisions to a severance compensation agreement and emailed the revisions to a Maryland resident. Defendant was not operating under the direct supervision of a licensed attorney when any of this conduct occurred. The documents did contain disclaimers stating he was not a licensed attorney. In North Carolina, the practice of law is defined in part as the performance of "any legal service for any other person, firm or corporation, with or without compensation, specifically including . . . advising or giv[ing an] opinion upon the legal rights of any person, firm or corporation[.]" N.C. Gen. Stat. § 84-2.1 (2007). Though it is plausible that another court could have come to a different conclusion based on this evidence, the DHC's decision that defendant's conduct fell under North Carolina's definition of the practice of law is supported by evidence and adequate findings in the record, and we see no error warranting reversal.
Defendant contends that the DHC did not take into account whether his actions constituted the practice of law as it is defined in Illinois or New York. However, defendant bears the burden of proof as to these matters. Under the DHC's order of discipline, the burden was on defendant to demonstrate that his activities did not constitute the practice of law in the jurisdictions where they occurred. Defendant presented no evidence and cited no authority demonstrating that his actions would not be considered the practice of law in those states. He has presented no such authority to this Court. The DHC therefore committed no error in finding defendant did not meet his burden and in concluding that he engaged in the practice of law during his suspension.
2. Failure to pay costs. The DHC's conclusion of law that defendant "failed to pay the costs of his disciplinary hearing as ordered" is supported by findings of fact stating that the order of discipline required defendant to pay the costs within sixty days and that defendant did not pay the costs. As explained above, these findings are supported by clear, cogent, and convincing evidence in the record.
3. Reformation. The DHC's conclusion of law that defendant had failed to prove by clear, cogent, and convincing evidence that he had reformed and now possesses the moral qualifications for admission to practice law is supported by the findings of fact. For two years following his suspension, defendant engaged in the unauthorized practice of law in two states. In addition, he "still steadfastly refuses to acknowledge any wrongfulness in the dishonest conduct that caused his suspension."
4. Rules of professional conduct. Finally, defendant assigns error to the DHC's conclusion of law that defendant failed to prove that he understands the current Rules of Professional Conduct. Defendant's brief makes no argument aside from challenging as unconstitutional the DHC's interpretation of Rule 8.4(b) of the Rules of Professional Conduct. Rule 8.4(b) allows for the discipline of attorneys for criminal acts without a conviction. N.C. Rev. R. Prof. Conduct 8.4(b) (2008). Because defendant "did not appeal the . . . order of discipline which ordered his disbarment, it became a final order not subject to collateral attack." Clayton v. N.C. State Bar, 168 N.C. App. 717, 719, 608 S.E.2d 821, 822 (2005) (citation omitted). Defendant may not now challenge the constitutional validity of the grounds for his suspension. 5. DHC cannot strike orders of discipline. Defendant asked the DHC to strike his orders of discipline because they were "patently unconstitutional" and violated fundamental due process. Again, defendant failed to appeal those orders of discipline at the appropriate time and is now barred from making a collateral attack on them.

C. The findings of fact and conclusions of law support the DHC's ultimate decision.
The DHC's ultimate decisions were to deny defendant's petition to stay the remaining portion of his suspension and to deny defendant's petition to strike the orders of discipline from the public record. The DHC properly concluded that defendant lacked the moral qualifications to practice law and had failed to comply with multiple requirements of his orders of discipline. In addition, the DHC did not have the authority to strike defendant's orders of discipline from the public record. Accordingly, the DHC's ultimate decision was supported by its findings of fact and conclusions of law.

IV. The State Bar did not "retaliate" against defendant.
Defendant also argues that the DHC committed reversible error because its decision to deny his petition for stay was made in retaliation for his prior lawsuit against the State Bar and that it was reversible error for the DHC to not refer the matter to the bar of another state. We disagree. Defendant argues that because the cost of appealing his suspension was prohibitively high, he instead opted to sue the State Bar, along with a panoply of individuals involved in his disciplinary hearing, for $1,300,000.00 in federal district court. The suit, filed pro se, alleged: numerous violations of defendant's First, Fifth, Sixth, and Fourteenth Amendment rights; that the plaintiffs "maintained old records on individuals which constituted the creation of bills of attainder"; and a violation of the Ex Post Facto clause. The suit was dismissed for failure to state a claim upon which relief could be granted. In that suit, defendant named individually the one lay member of the Hearing Committee, R. Mitchel Tyler, as well as the State Bar's counsel, A. Root Edmonson. Defendant contends that the participation of these two individuals in the stay hearing, along with the participation of the State Bar as an institution, tainted the hearing to such a degree that its outcome could not be fair. Defendant did not object to the participation of these individuals or the State Bar until he filed his motion for a new hearing following denial of stay.
"The fact that a judge of the trial division of this State has ruled against a party does not constitute any basis for asserting that the judge committed fraud or was not impartial." Mineola Community Bank, S.S.B. v. Everson, 186 N.C. App. 668, ___, 652 S.E.2d 369, 372 (2007). Defendant does not present any argument or evidence beyond the hearing's outcome that any member of the DHC, the State Bar Counsel, or the State Bar as a body failed to exercise impartial judgment or "retaliated" against him.

V. Conclusion.
After careful review of the DHC's order denying reinstatement using the whole-record test, we find substantial evidence supporting the lower body's findings and that those findings support its conclusions of law. We further determine that the DHC's findings and conclusions support its ultimate decision to deny defendant's petition for stay of suspension. Accordingly, we affirm the order of the DHC.
Affirmed.
Panel consisting of:
Judges CALABRIA, ELMORE, and STROUD.
Report per Rule 30(e).
NOTES
[1] Defendant also argues that the DHC improperly found that he was guilty of federal criminal acts, but there is no such finding in the order denying reinstatement.