An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA14-1196

Filed: 21 April 2015

Disciplinary Hearing Commission of the North Carolina State Bar, No. 13 DHC

25

THE NORTH CAROLINA STATE BAR, Plaintiff,

v.

WILLIAM T. BATCHELOR, II, Attorney, Defendant.

Appeal by defendant from order entered 22 June 2014 by the Disciplinary Hearing Commission of the North Carolina State Bar. Heard in the Court of Appeals 2 March 2015.

> *The North Carolina State Bar, by David R. Johnson, Deputy Counsel, Maria J. Brown, Deputy Counsel, and Katherine Jean, Counsel, for plaintiff-appellee.*

> *Crawford & Crawford, LLP, by Robert O. Crawford, III, for defendant-appellant.*

STEELMAN, Judge.

Where defendant conceded that he had committed a violation of the North Carolina Rules of Professional Conduct, the Disciplinary Hearing Commission did not err in concluding that the violation had occurred. The DHC did not err in suspending defendant's license to practice law.

<u>I. Factual and Procedural Background</u>

William T. Batchelor (defendant) was admitted to the practice of law on 21 March 1986. After one year working for another lawyer at Carolina Legal Associates in Wilmington, defendant purchased the practice, and has practiced law since that time. To reconcile his trust account, defendant used a form developed by his father, a non-lawyer, rather than the State Bar reconciliation form. Although defendant reconciled his trust account monthly, he did not do so in accordance with State Bar specifications, and did not conduct proper quarterly reconciliations. Defendant did not put client names on deposit slips, making it virtually impossible to track client funds in the trust account.

In the mid-1990s, defendant established a flat fee system to cover office expenses, charging clients $16 for bankruptcy cases and $25 for family law cases. This system was explained to clients. Defendant paid office supply vendors directly out of the trust account. Defendant was audited by the State Bar in the early 1990s. He acknowledged that he did not listen carefully to the recommendations of the auditor.

From 2007 to 2010, defendant engaged four employees in his bankruptcy and family law practice. He maintained his trust account with BB&T. In 2009, BB&T changed its policies, prohibiting defendant from using a credit card with his trust account. Defendant opened a new trust account with RBC Bank, which did allow a credit card, and transferred $1,000 from the BB&T trust account to the RBC trust

account. The owners of the $1,000 were not identified. Defendant was subsequently sanctioned by the Bankruptcy Court in March of 2010. Defendant disgorged bankruptcy fees and was barred from filing bankruptcy petitions for one month. Defendant was also reprimanded, and paid a $5,000 monetary sanction in another Bankruptcy Court matter in November of 2010. Subsequently, defendant reduced his caseload, studied the State Bar's *Lawyer's Trust Account Handbook*, and made efforts to correct his trust accounting practices.

In late 2010 or early 2011, a former employee filed a grievance with the State Bar, which resulted in an investigation of defendant's trust accounting practices between 1 January 2007 and 1 January 2010. During this investigation, the State Bar also reviewed two prior reprimands in defendant's history: the first, from November of 1990, for failure to adequately handle a client's separation agreement; the second, in 2007, for collecting a flat fee from a client and then unilaterally converting to an hourly billing rate. After the grievance was filed, defendant consulted a certified public accountant recommended by the State Bar, but there is no evidence in the record that the accountant was retained by defendant to assist with his trust account practices, nor that defendant implemented any suggestions that may have been made by the accountant.

The matter was heard by the State Bar Disciplinary Hearing Commission (the DHC) on 9 May 2014. Based upon the stipulated facts and the testimony at the

hearing, the DHC concluded that defendant was subject to discipline pursuant to N.C. Gen. Stat. § 84-28(b)(2) (2013). The DHC found the presence of three of the ten factors enumerated in 27 N.C. Admin. Code 1B.0114(w)(1), which warranted suspension of defendant's license to practice law. The DHC suspended defendant's license to practice law for three years, with the proviso that defendant could seek a stay of the final two years of suspension after the first year.

Defendant appeals.

## II. Standard of Review

We first note that "[t]he standard for judicial review of attorney discipline cases is the 'whole record' test." *N.C. State Bar v. Sheffield,* 73 N.C. App. 349, 354, 326 S.E.2d 320, 323 (1985) (citing *N.C. State Bar v. DuMont,* 304 N.C. 627, 286 S.E.2d 89 (1982)).

> This test requires the reviewing court to consider the evidence which in and of itself justifies or supports the administrative findings and ... also [to] take into account the contradictory evidence or evidence from which conflicting inferences can be drawn.... Under the whole record test there must be substantial evidence to support the findings, conclusions and result.... The evidence is substantial if, when considered as a whole, it is such that a reasonable person might accept as adequate to support a conclusion.

*Id.* (quoting *DuMont,* 304 N.C. at 643, 286 S.E.2d at 98-99) (internal quotations omitted; alterations in original). "Ultimately, the reviewing court must apply all the aforementioned factors in order to determine whether the decision of the lower body,

e.g., the DHC, has a rational basis in the evidence." *N.C. State Bar v. Talford,* 356 N.C. 626, 632, 576 S.E.2d 305, 310 (2003) (quotations and citations omitted). Our Supreme Court has held that

> the following steps are necessary as a means to decide if a lower body's decision has a "rational basis in the evidence": (1) Is there adequate evidence to support the order's expressed finding(s) of fact? (2) Do the order's expressed finding(s) of fact adequately support the order's subsequent conclusion(s) of law? and (3) Do the expressed findings and/or conclusions adequately support the lower body's ultimate decision?

*Id.* at 634, 576 S.E.2d at 311.

### III. Excessive Fees

In his first argument, defendant contends that the DHC panel erred in concluding that he charged and collected clearly excessive fees. We disagree.

The North Carolina Rules of Professional Conduct provide that:

> (a)   A lawyer shall not make an agreement for, charge, or collect an illegal or clearly excessive fee or charge or collect a clearly excessive amount for expenses. The factors to be considered in determining whether a fee is clearly excessive include the following:
>
> (1)   the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
>
> (2)   the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
>
> (3)   the fee customarily charged in the locality for similar

legal services;

> (4)     the amount involved and the results obtained;
>
> (5)     the time limitations imposed by the client or by the circumstances;
>
> (6)     the nature and length of the professional relationship with the client;
>
> (7)     the experience, reputation, and ability of the lawyer or lawyers performing the services; and
>
> (8)     whether the fee is fixed or contingent.

N.C. R. Prof'l Conduct 1.5(a).   In its complaint against defendant, the State Bar

alleged that:

> 7.     During the period January 1, 2007 through June 30, 2010, Defendant's practice was to collect a flat expense charge from clients to cover costs for mail, postage, paper and printer cartridges ("expense charge"). The expense charge collected to cover these costs was either $16.00 or $25.00, depending on the case, and the money collected from the client was deposited into the trust account Defendant was using at the time.
>
> 8.     The flat expense charge referenced in paragraph 7 was collected from clients irrespective of the actual costs Defendant incurred handling an individual client's case.

The State Bar further alleged that:

> c)     By charging clients a flat expense charge of either $16.00 or $25.00, depending on the case, irrespective of the actual costs Defendant incurred in handling an individual client's case, Defendant charged and collected a clearly excessive amount for expenses in violation of Rule 1.5(a)[.]

In his answer to the complaint, defendant admitted to paragraphs 7 and 8, quoted above, and contended that paragraph c) contained "legal conclusions to which no response is appropriate or required."

The State Bar subsequently moved for summary judgment, alleging that:

> The facts established by Defendant's admissions prove the violations alleged in paragraphs a) through g), and i) and j) of the complaint; therefore, Plaintiff is entitled to judgment as a matter of law regarding the rule violations set forth in paragraphs a) through g), and i) and j) on pages 4 and 5 of Plaintiff's complaint.

In his response to the motion for summary judgment, defendant stated:

> Defendant does not oppose the entry of summary judgment on the for the plaintiff [sic] on the Rule violations alleged in paragraphs a) through g) and i) and j) of the complaint, and agrees that the sole issue remaining in this case is the issue of what, if any, discipline is appropriate for the Rule violations.

"Final pleadings which define the issues to be litigated and upon which the case goes to trial can embody a judicial admission of a matter and serve to conclusively remove the establishment of that fact from the issues which are to be tried." *Outer Banks Contractors, Inc. v. Forbes*, 302 N.C. 599, 606, 276 S.E.2d 375, 380 (1981). "A judicial admission is a formal concession which is made by a party in the course of litigation for the purpose of withdrawing a particular fact from the realm of dispute." *Id.* at 604, 276 S.E.2d at 379.

In the instant case, defendant, in his response to the State Bar's motion for summary judgment, conceded the alleged rules violations, including the excessive fees as alleged in paragraph c). Defendant explicitly stated that the sole issue remaining in the case was that of "what, if any, discipline is appropriate for the Rule violations." We hold that this constitutes a judicial admission, designed to withdraw the question of whether defendant charged excessive fees from the realm of dispute. We further note that, although defendant appeals from the final order of discipline, he does not appeal from the summary judgment order which established his judicial admission. Accordingly, we hold that because there was a binding judicial admission that defendant committed the violations alleged, the DHC did not err in concluding that defendant charged and collected clearly excessive fees.

This argument is without merit.

## IV. Suspension

In his second and third arguments, defendant contends that the DHC panel erred in suspending his license to practice law. We disagree.

### A. 27 N.C. Admin. Code 1B.0114(w)(1)

Defendant first contends that the DHC hearing panel erred in concluding that three factors enumerated in 27 N.C. Admin. Code 1B.0114(w)(1) were present to justify a suspension of his license to practice law. We disagree.

Title 27, Chapter 1 of the North Carolina Administrative Code, concerning the rules and regulations of the North Carolina State Bar, provides the following:

(1)  Suspension or disbarment is appropriate where there is evidence that the defendant's actions resulted in significant harm or potential significant harm to the clients, the public, the administration of justice, or the legal profession, and lesser discipline is insufficient to adequately protect the public. The following factors shall be considered in imposing suspension or disbarment:

(A)  intent of the defendant to cause the resulting harm or potential harm;

(B)  intent of the defendant to commit acts where the harm or potential harm is foreseeable;

(C)  circumstances reflecting the defendant's lack of honesty, trustworthiness, or integrity;

(D)  elevation of the defendant's own interest above that of the client;

(E)  negative impact of defendant's actions on client's or public's perception of the profession;

(F)  negative impact of the defendant's actions on the administration of justice;

(G)  impairment of the client's ability to achieve the goals of the representation;

(H)  effect of defendant's conduct on third parties;

(I)  acts of dishonesty, misrepresentation, deceit, or fabrication;

(J)  multiple instances of failure to participate in the legal profession's self-regulation process.

27 N.C. Admin. Code 1B.0114(w)(1) (2013). The Administrative Code lists other factors to be considered, in addition to those set forth above, in any instance in which discipline is imposed. 27 N.C. Admin. Code 1B.0114(w)(3). In its order of discipline, the DHC concluded:

> 1.  The Hearing Panel has carefully considered all of the different forms of discipline available to it. In addition, the Hearing Panel has considered all of the factors enumerated in 27 N.C.A.C. 1B §.0114(w)(1) of the Rules and Regulations of the North Carolina State Bar and concludes the following factors are present which warrant suspension of Defendant's license:
>
> a.  Intent of Defendant to commit acts where the harm or potential harm is foreseeable, to wit: failing to comply with trust account rules to ensure proper maintenance of and accounting for entrusted funds;
>
> b.  Elevation of Defendant's own interest above that of his clients; and
>
> c.  Negative impact of Defendant's actions on the client's or public's perception of the legal profession.
>
> . . .
>
> 3.  The Hearing Panel has considered all of the factors enumerated in 27 N.C.A.C. 1B §.0114(w)(3) of the Rules and Regulations of the North Carolina State Bar and concludes the following factors are applicable in this matter:
>
> a.  Prior disciplinary offenses in this state and the United States Bankruptcy Court;
>
> b.  Pattern of misconduct;

  c.  Multiple offenses;

  d.  Full and free disclosure to the Hearing Committee and Defendant's cooperative attitude toward the proceedings;

  e.  Defendant's good character and reputation with lawyers in his community and with clients as presented in letters written on his behalf and

  f.  Substantial experience in the practice of law.

. . .

  6.  This Hearing Panel has considered lesser alternatives and concludes that a suspension is appropriate under the facts and circumstances of this case to address the potential for significant harm to Defendant's clients, and for the protection of Defendant's clients and the public.

In its conclusions of law, paragraph 1, the DHC cited three of the factors based upon which a suspension would be appropriate. Defendant contends that there was no evidence to support these factors.

With respect to the first factor, intent to commit actions with foreseeable harmful results, defendant contends that he did not intentionally commit the actions at issue, specifically that he did not intend to err in reconciling his trust account, believing that he was performing reconciliations properly. However, the requirement is not that defendant had to foresee the harmful results of his actions; rather, that the defendant intended to commit the actions, and that harmful results were

foreseeable. The evidence at trial showed that defendant did not keep a ledger book and did not conduct a three-way reconciliation, both of which are considered standard practice in reconciling a trust account. Defendant's deviation from these practices was sufficient evidence that he was intentionally acting in a manner from which he could foreseeably harm clients.

Defendant further contends that no clients were actually harmed by his acts. The North Carolina Administrative Code requires that any harm be foreseeable, not that it actually occur. The purpose of the code section is to deter those behaviors which may harm clients, not only to punish those which actually do.

With respect to the second factor, that defendant elevated his interests above those of his clients, the evidence at trial shows that defendant charged flat fees to each client intended to cover expenses for his office, as well as for other clients. It was not in any client's interest to pay for costs not connected to his or her own case; for defendant to charge them for additional office expenses, or work on other cases, was to elevate his own interests above theirs. We hold that this was sufficient evidence to support this factor.

With respect to the third factor, that defendant's conduct negatively impacted a perception of the legal profession, defendant offers a disingenuous argument that the Bar itself has damaged the profession's reputation by publishing articles about lawyers' failures to reconcile their trust accounts. The Bar's publication history is

not at issue; what is at issue is the fact that defendant failed to properly reconcile his own trust accounts, and such conduct negatively impacted the reputation of the legal profession. We hold that there was sufficient evidence to support this factor.

Defendant lastly contends that the trial court found none of the remaining seven factors in 27 N.C. Admin. Code 1B.0114(w)(1), which should count in his favor. We note that the code does require these factors to be considered. Their absence from the DHC opinion, however, does not require us to conclude that they were not considered; rather, it indicates that they did not factor into the DHC's final decision. We hold that the factors found by the DHC were sufficient to support a conclusion that suspension was appropriate.

This argument is without merit.

### B. Insufficient Evidence

Defendant next contends that the DHC hearing panel erred in suspending his license to practice law because there was insufficient evidence to support a finding that a lesser sanction would not be adequate. We disagree.

The evidence at trial shows not only that defendant regularly charged inappropriate fees, but that he performed incomplete reconciliations of his trust account. Defendant's failure to grasp his own mistakes, coupled with his failure to seek assistance with the process, suggests a potential for future harm to his clients. Defendant was previously disciplined for his fee charging practices and his handling

of cases, both in the Bankruptcy Court and before the State Bar. This suggests a pattern of harmful deviation from professional rules. We hold that the DHC did not err in concluding that suspension was an appropriate sanction.

This argument is without merit.

AFFIRMED.

Chief Judge McGEE and Judge BRYANT concur.

Report per Rule 30(e).